EUGENIA BALZEKAS, Indiv. and as Adm'r of the Estate of Ralph Balzekas, Plaintiff-Appellee, v. RONALD LOOKING ELK *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—92—0677

Opinion filed September 17, 1993.

530

Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago (Edward J. McCambridge and P. Mark Crane, of counsel), for appellants.

Motherway & Glenn, P.C., of Chicago (Nicholas J. Motherway, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiff instituted this action seeking recovery for personal injuries sustained in an automobile collision with a vehicle operated by defendant Ronald Looking Elk (hereinafter Looking Elk) during the course of his employment by defendant Transwestern Express, Ltd. (hereinafter Transwestern). Plaintiff was also appointed administrator of the estate of her husband, Ralph Balzekas, and sought damages for his wrongful death and for his conscious pain and suffering which resulted from the automobile accident. Plaintiff alleged that her injuries and the wrongful death of her decedent resulted from the negligence of the defendants. Prior to trial, defendants admitted liability, and the cause proceeded to trial on the issue of damages only. The jury awarded damages in the amount of $1 million for the wrongful death of plaintiff's decedent and $600,000 for his conscious pain and suffering. The jury also awarded damages in the amount of $1,542,298.70 to plaintiff for the injuries she sustained in the accident.

On appeal, defendants contend that the trial court erred in (1) excluding evidence that the decedent's life expectancy was lower than

the average and (2) denying their motion for a mistrial based upon improper comments made by plaintiff's counsel during opening statements. Defendants also assert that the damages awarded for the wrongful death and survival counts were excessive. Defendants have not challenged the damage award for plaintiff's personal injuries.

The record indicates that at about 4:30 p.m. on August 1, 1988, the vehicle driven by the decedent collided with the truck operated by Looking Elk. Immediately following the accident, the decedent was alive, conscious, and in pain. The decedent was trapped inside his car for approximately two hours and expressed great concern for his wife, who was also trapped within the vehicle. Upon being extricated from his automobile, he was transported to the hospital. He was still conscious and in pain when he arrived at the hospital at approximately 5:50 p.m. At about 7:45 p.m., morphine was administered to relieve pain. The decedent died at 12:45 p.m. of the next day, having survived approximately 20 hours after the accident.

According to Dr. Gary Merlotti, the emergency room physician, the decedent was conscious for approximately 10 hours of the 20-hour period of survival. Darlene Haan, the decedent's daughter, testified that he was unconscious for the last six hours prior to his death. Ms. Haan also testified that when she arrived at the hospital, her father was pale, his lips were blue, and she could see bone protruding through the skin on his head. The decedent bled heavily from his legs, which were broken, and his lungs started to fill with fluid. He begged his daughter to help him because he was in pain and could not breathe. The decedent received pain medication only once, and his subsequent pleas for more medication were rejected because of the possibility of complication which might result from his low blood pressure, which resulted from the extreme loss of blood.

The decedent was 64 years old at the time of his death and had been retired on disability for 18 years. He last worked as a die setter in 1968. No evidence was presented at trial regarding any lost income or financial support occasioned by the decedent's death. Medical bills and related expenses incurred by reason of the decedent's injuries and death totalled $26,181.13.

Plaintiff brought a motion *in limine* seeking to exclude any evidence or testimony that the decedent had throat cancer, a laryngectomy, and a heart condition, or that any party smoked cigarettes. In opposition to plaintiff's motion, defendants stated that they intended to introduce testimony by Dr. Merlotti that the decedent's medical conditions decreased his life expectancy. At this time, defense counsel argued that he should be permitted to impeach the reliability of life

expectancy tables by presenting evidence that the decedent's life expectancy would be shortened as a result of his medical condition. The court's initial ruling on the motion *in limine* required only that the parties advise the court before introducing any evidence of the decedent's medical history.

One week prior to trial, defendants served plaintiff's counsel with their motion for leave to amend their answer to admit liability and their proposed amended answer. Five days later and two days before trial commenced, the court heard and made an oral ruling which granted defendants' motion for leave to amend.

During his opening statement, plaintiff's counsel stated that "two days ago" the defendants had admitted their liability for the accident. Defense counsel's immediate objection was sustained, and the court admonished the jury that "[t]iming is not relevant." The court further instructed the jury to disregard the comment made by plaintiff's attorney. When the opening statements were concluded, defendants moved for a mistrial, claiming that the comment by plaintiff's counsel during his opening statement was irrelevant, inflammatory, and prejudicial. The trial court denied defendants' motion, finding that the effect of the comment did not warrant a mistrial.

During the plaintiff's case in chief and prior to the testimony of Dr. Merlotti, defendants advised the court of the nature of the testimony they sought to introduce regarding the decedent's medical history and his diminished life expectancy. Specifically, defense counsel indicated that Dr. Merlotti would testify that the life expectancy of a person with a history of throat cancer would certainly be decreased compared to the general population. This expected testimony would be consistent with Dr. Merlotti's deposition testimony, an abstract of which was offered to the court. Thereafter, the trial court granted plaintiff's prior motion *in limine,* excluding all evidence that the decedent had throat cancer and that his life expectancy would be decreased when compared to the general population. The court also excluded evidence of the decedent's heart disease, laryngectomy, and smoking history.

In granting the plaintiff's motion, the trial judge ruled that defendants were precluded from presenting evidence that the decedent's life expectancy was diminished unless their witness had "special knowledge" of the "medical particulars *** about [the] status of his carcinoma, whether it [was] in or out of remission, *** [the] parts of his body, whether they [were] vital or not and how it affected his life and what his prognosis [was] based upon the degree of non-resolu-

tion, its growth rate, its dividing times, [and] the particular microscopic examination of this particular cell."

Over defendants' objection, the trial court admitted into evidence statistics from a life-expectancy table which indicated that the life expectancy of an average 64-year-old male was 15.6 years. In challenging the admission of these tables, defense counsel stated only that he asserted the objections previously raised during argument on the motion *in limine*.

The jury instruction relating to the decedent's life expectancy stated as follows:

"In assessing damages you may consider how long Eugenia Balzekas and Darlene Haan will be likely to sustain pecuniary losses as a result of Ralph Balzekas' death, considering how long Ralph Balzekas was likely to have lived and how long Eugenia Balzekas and Darlene Haan are likely to live.

According to a table of mortality in evidence, the life expectancy of a male person aged 64 years is 15.6 years. That of a female person aged 66 years is 18.8 years and that of a female person aged 40 years is 40.6 years. These figures are not conclusive. They are the average life expectancies of persons who have reached those ages. They may be considered by you in connection with other evidence relating to the probable life expectancies of the decedent and his widow and his daughter including evidence of the decedent's occupation, health, hobbies and activities, bearing in mind that some persons live longer and some persons live less than the average."

Upon consideration of all of the evidence presented, the jury returned a verdict of $1 million for the wrongful death of plaintiff's husband, $600,000 for his conscious pain and suffering, and $1,542,298.70 to plaintiff for the injuries she sustained in the accident.

Defendants' post-trial motion was denied, and they appeal.

■ We initially consider defendants' argument that the trial court erred in excluding the testimony of Dr. Merlotti that the decedent's life expectancy was lower than the average for a male person of similar age.

Evidence of the physical condition of the decedent should not be admitted if it is so remote or speculative as to have no real bearing or impact upon the specific life expectancy of that particular individual. See *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 377-78, 494 N.E.2d 212.

In the instant case, the trial court excluded Dr. Merlotti's testimony, finding that it was not specific enough to justify its admission.

In making this ruling the trial judge noted that Dr. Merlotti would not have been able to testify as to the decedent's specific medical condition and prognosis based upon the status of his carcinoma, its growth rate and dividing times, and whether it was or was not in remission.

Our review of the record reveals that although Dr. Merlotti indicated at his deposition that the life expectancy of a person with a history of throat cancer "certainly would be decreased [when] compared to the general population," he testified that a tracheotomy in and of itself did not necessarily decrease a person's life expectancy. When asked whether the decedent would have had a decreased life expectancy, Dr. Merlotti stated, "I can't really comment, because I don't know what stage his disease was, and I don't know what his treatment was exactly. *** [W]ithout knowing exactly how extensive his disease had been and exactly what treatments had been undertaken, it's impossible to predict what is [sic] his life expectancy was."

It was undisputed that Dr. Merlotti was not the decedent's regular physician but only examined him in the emergency room after the accident. The record indicates, therefore, that Dr. Merlotti would not have had access to the type of information which would be necessary for him to accurately evaluate the decedent's long-term prognosis and to determine with any kind of certainty a reasonable estimate of his life expectancy. Based upon the record before us, we conclude that the trial court correctly found that the proffered testimony of Dr. Merlotti was too vague and uncertain to justify its admission.

■ Defendants also assert that if the exclusion of Dr. Merlotti's testimony was proper, then the court should have excluded the life-expectancy tables presented by plaintiff.

Life-expectancy tables are admissible as an aid in assessing damages in wrongful death actions. (*Calvert v. Springfield Electric Light & Power Co.* (1907), 231 Ill. 290, 294, 83 N.E. 184; *Fultz*, 144 Ill. App. 3d at 378.) Although admissible, life-expectancy tables are not conclusive and should be considered by the jury along with any other relevant evidence, including the age, health, habits, and physical condition of the deceased at the time of death. *Calvert*, 231 Ill. at 294; *Fultz*, 144 Ill. App. 3d at 378; *Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 333, 481 N.E.2d 957.

Where the plaintiff is a lineal next of kin of the deceased, the law presumes a pecuniary loss which obtains solely from the plaintiff's relationship to the decedent. *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 471, 349 N.E.2d 413; *In re Estate of Wiese* (1989), 178 Ill. App. 3d 938, 942, 533 N.E.2d 1183; *Dotson v.*

*Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036, 1053-54, 510 N.E.2d 1208.

Defendants contend that the admission of life-expectancy tables was error because plaintiff did not present any evidence of financial dependence upon the decedent. In support of this contention, defendants rely upon the decision of *In re Estate of Wiese* (1989), 178 Ill. App. 3d 938, 533 N.E.2d 1183, where the third district found no error in a refusal to admit evidence of the decedent's life expectancy to establish the financial loss of the parties resulting from his death. The court noted that the adult children of the decedent were entitled to a proportionate share of the wrongful death proceeds based upon loss of society regardless of financial dependence. The court went on to state that because the dependence of the adult children was not based upon proof of financial loss, life-expectancy tables would not have been relevant. *In re Estate of Wiese*, 178 Ill. App. 3d at 942.

We hold that defendants are precluded from challenging the admission of the life-expectancy tables on the basis of a lack of financial dependency where this objection was not raised before the trial court.

The record reflects that the trial court heard lengthy arguments from counsel for both parties as to the admissibility of Dr. Merlotti's testimony as it related to the evidence contained in the life-expectancy tables. Yet, no specific objection was asserted as to the lack of evidence of financial dependency. Before the life-expectancy tables were read into evidence, defense counsel objected to their admission pursuant to the objections previously raised during the argument on the motion *in limine.* Because the defendants failed to raise a specific objection relating to financial dependence, they have waived their right to assert this issue on appeal.

■ We next consider defendants' claim that the trial court erred in denying defendants' motion for a mistrial based upon allegedly improper and prejudicial comments made during the opening statement of plaintiff's counsel. Specifically, defendants contend that they were deprived of the right to a fair trial by plaintiff's counsel's statement that defendants had admitted liability two days before the trial commenced.

Improper comments by counsel constitute reversible error only where they are so prejudicial as to deprive the other party of the right to a fair trial. (See *Carlasare v. Wilhelmi* (1985), 134 Ill. App. 3d 1, 7, 479 N.E.2d 1073.) The determination of whether improper remarks of counsel are so prejudicial to the right to a fair trial is a matter resting within the sound discretion of the trial court. (*Carlasare,* 134 Ill. App. 3d at 7.) When a remark is objected to, the objection is

sustained, and the jury is instructed to disregard the remark, there is generally no reason to believe that the jury was prejudiced. *Carlasare*, 134 Ill. App. 3d at 5; *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 258, 451 N.E.2d 1313.

In the instant case, plaintiff's counsel remarked during his opening statement that defendants had admitted liability for the accident two days before the trial commenced. Defense counsel's immediate objection was sustained, and the court admonished the jury that "[t]iming is not relevant." The court further instructed the jury to disregard the comment made by plaintiff's attorney. When the opening statements were concluded, defendants moved for a mistrial, claiming that the comment by plaintiff's counsel during his opening statement was irrelevant, inflammatory, and prejudicial. The trial court denied defendants' motion, finding that the effect of the comment did not warrant a mistrial.

The record indicates that any prejudice which may have resulted from the comment by plaintiff's counsel was cured by the trial judge's ruling that defendants' objection was sustained and by the immediate admonition to disregard the comment because the timing of defendants' conduct was not relevant.

The determination of whether or not to grant a mistrial rests within the sound discretion of the trial court based upon the particular circumstances of the case. (*Colls v. City of Chicago* (1991), 212 Ill. App. 3d 904, 953, 571 N.E.2d 951; *Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 913, 410 N.E.2d 249.) A mistrial will generally be declared only as the result of some occurrence at trial of such character and magnitude that a party is thereby deprived of a fair trial. (*Colls*, 212 Ill. App. 3d at 953; *Benuska*, 87 Ill. App. 3d at 913; *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 359, 366 N.E.2d 327.) The ruling of the trial court on a motion for a mistrial will not be disturbed absent a clear abuse of discretion. *Colls*, 212 Ill. App. 3d at 953; *Benuska*, 87 Ill. App. 3d at 913; *Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 210, 398 N.E.2d 188.

Based upon the record presented in this case, we do not believe that the statement made by plaintiff's counsel was of such character or magnitude as to deprive defendants of the right to a fair trial. Consequently, we hold that the trial court's refusal to grant a mistrial did not constitute a clear abuse of discretion.

■ Finally, we address defendants' contention that the jury awards for wrongful death and for conscious pain and suffering were so clearly excessive as to require a new trial or remittitur.

The determination of appropriate damages is particularly within the province of the jury. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4; *Carter v. Indiana Harbor Belt R.R. Co.* (1989), 190 Ill. App. 3d 1052, 1059, 547 N.E.2d 488.) A verdict will not be considered excessive unless it falls outside the necessarily flexible limits of fair and reasonable compensation, resulted from passion or prejudice, or was so large as to shock the judicial conscience. (*Carter*, 190 Ill. App. 3d at 1059.) A reviewing court will order a new trial on damages only if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. *Hollis*, 108 Ill. 2d at 407.

Defendants assert that the $1 million award for the wrongful death count was excessive when examined in light of the decedent's age and employment history. We disagree.

The law presumes a pecuniary loss which obtains solely from the plaintiff's relationship to the decedent (*Dotson*, 157 Ill. App. 3d at 1053-54), including intangible noneconomic injuries such as the loss of society and the loss of consortium (*Drews v. Gobel Freight Lines, Inc.* (1991), 144 Ill. 2d 84, 97, 578 N.E.2d 970). Courts of review are not free to reweigh the evidence simply because they may have arrived at a different verdict than the jury. (*Drews*, 144 Ill. 2d at 97.) Considering the evidence of the decedent's relationships with his wife and adult daughter, we cannot say that the verdict of the jury was outside the limits of fair and reasonable compensation. See *Drews*, 144 Ill. 2d at 98.

We must also reject defendants' claim that the $600,000 award for conscious pain and suffering was excessive.

The evidence established that the decedent was conscious for approximately 10 of the 20 hours he survived after the accident. He was trapped in his car for approximately two hours and expressed great concern for his wife, who was also trapped inside the vehicle. The decedent's daughter testified that when she arrived at the hospital, her father was pale, his lips were blue, and she could see bone protruding through the skin on his head. The decedent bled heavily from his legs, which were broken, and his lungs started to fill with fluid. He begged his daughter to help him because he was in pain and could not breathe. The decedent received only one injection of morphine for pain about three hours after the collision, and his subsequent pleas for more medication were denied because of the possibility of complication which might result from his low blood pressure, which resulted from the extreme loss of blood.

538

Based upon the severity of the decedent's injuries and the amount of pain he suffered, we cannot say that the jury's award of $600,000 for conscious pain and suffering was excessive or was not within the limits of fair and reasonable compensation.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.