FIRST DIVISION    

SEPTEMBER 29, 1997

No. 1-95-3471

MARK A. PETERSON, ) APPEAL FROM THE

) CIRCUIT COURT

Plaintiff-Appellee, ) OF COOK COUNTY.

)

v. )

)

RESS ENTERPRISES, INC., d/b/a )

ARMY TRAIL TIRE & SERVICE CENTER, )

an Illinois Corporation, ) HONORABLE 

) IRWIN J. SOLGANICK,

Defendant-Appellant. ) JUDGE PRESID­ING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of an action brought by plaintiff, Mark Peterson, against defendant, Ress Enterprises, Inc., d/b/a Army Trail Tire & Service Center (Ress), and others, for injuries he sustained in an automobile accident as a result of improper tire repair.  Following a jury trial in the circuit court of Cook County, the jury returned a verdict in favor of plaintiff and against Ress and other defendants in the amount of $12,650,000, and appor­tioned 30% of the fault for the accident to Ress.  On appeal, Ress contends that:  (1) the trial court erred in failing to enter judgment notwithstanding the verdict (j.n.o.v) because plaintiff failed to prove proximate cause; (2) the verdict is against the manifest weight of the evidence; (3) the trial court erred in failing to instruct the jury regarding adverse influences because plaintiff lost the spare tire; (4) the trial court erred in barring evidence showing the bias and prejudice of plaintiff's witnesses; and (5) the trial court erred in failing to impose a reasonable sanction for plaintiff's loss of the spare tire.  For the following reasons, we affirm the judgment of the trial court.   

The following facts are relevant to this appeal.  On March 19, 1989, Theodore Christ was driving a Ford Bronco (Bronco) automobile owned by James J. Koran, eastbound on Inter­state 30 near Prescott, Arkansas.  Plaintiff, Sean Jerding and others were passengers in the Bronco.  The left rear tire of the Bronco failed, Christ lost control of the vehicle, and the Bronco rolled over and off of the roadway.  Plaintiff sustained injuries as a result of the accident which rendered him a quadriplegic.  Jerding also suffered serious inju­ries. 

Plaintiff and Jerding filed a complaint against Ress and others on September 28, 1990, alleging negligence for improper repair performed to a tire, and strict liability in tort damages.  Plaintiff and Jerding alleged that Ress acted as an agent of Goodyear Tire & Rubber Co.

Plaintiff and Jerding also brought suit against B.F. Good­rich and Suburban Tire Co., alleging negligence and strict lia­bil­ity in connection with the manufacture, sale and distribu­tion of the WildTrac tires.  Plaintiff and Jerding brought suit against Ford Motor Company (Ford), alleging negligence and strict liability in connection with the fiberglass roof, and the propen­sity of the Bronco to roll over.

Plaintiff and Jerding amended their complaint joining Camel Tire Care Products, a division of Bridge Products, Inc. (Bridge), alleging negligence in connection with the manufacture and distri­bution of string plugs.  Plaintiff and Jerding joined Theodore Christ on allegations of negligent operation of the Bronco, and James Koran on allegations of negligent maintenance of the Bronco.

On April 4, 1995, prior to trial, the trial court entered an order granting Jerding's motion for voluntary dismissal of his action against all defendants without prejudice.  In addition,  plaintiff entered into pre-trial monetary settlements with Ford, Bridge, James Koran, and Theodore Christ.

TRIAL

At trial, Theodore Christ testified on plaintiff's behalf that on March 19, 1989, he was driving the Koran's Bronco home to Normal, Illinois, following a trip to South Padre Island, Texas.  Christ described the highway conditions as clear and dry.  Christ heard a "thump" noise, then suddenly lost control of the Bronco.  The Bronco began to "fishtail," then rolled over onto the driv­er's side causing Christ to hit his head on the roof.

Walter Phillips testified that he was driving in a vehicle behind the Bronco at the time of the accident, when he observed sparks emitting from the rear end of the Bronco.  Phillips saw the Bronco spin clockwise, so that the front end of the Bronco was facing him.  Then the Bronco rolled over, the top of the vehicle hit the ground, and the roof detached from the vehicle.   All of the occupants were ejected from the Bronco in the course of the crash.  Phillips stopped his vehicle to render assistance and summoned help.

Plaintiff presented the accident reconstruction testimony of Dr. Michael Kaplan to show that failure of the left rear tire caused loss of driver control.  Dr. Kaplan testified that loss of steering control occurred as a result of the left rear tire de­flating and the tire rim contacting the pavement.  Dr. Kaplan testified that the Bronco rolled over 2 1/4 turns, and travelled 124 feet after it began to roll over.

Dr. Kaplan stated that the fiberglass roof of the Bronco was crushed and torn off when it rolled over, and that plaintiff was ejected from the Bronco in the crash.  Dr. Kaplan stated that the fiberglass roof of the Bronco is defective in design and unrea­sonably dangerous due to its propensity to tear off in roll-over type accidents.  Dr. Kaplan testified that occupants ejected from a vehicle in a roll-over are more likely to sustain serious per­sonal injuries.  Dr. Kaplan admitted that he never saw the tire that failed, and did not render an opinion as to the cause of the tire failure.

Harold Herzlich, a former employee of both Goodyear and Armstrong Perilli Tire Co., testified as an expert witness on plaintiff's behalf.  Herzlich testified that the tire that failed had been previously repaired using a string plug inserted from the outside.  Herzlich testified that string plug repairs from the outside are improper for two reasons:  (1) the repairman cannot inspect the inside of the tire for damage; and (2) a string plug may cause air to seep into the tire casing.  Herzlich testified that if air gets into the tire casing it can cause chemical chang­es in the rubber of the tire, and these changes can cause loss of the follow­ing: flexibility, stretchability, resil­iency and strength.  For these reasons, Herzlich stated that tires should be repaired from the inside using a patch and plug.

Herzlich testified that failure to inspect the inside of the tire for damage at the time it was repaired is not a proximate cause of this accident because there was not damage on the inside of the tire at the time of repair to be observed.  Herzlich stated that road hazard impact caused the tire to fail in this case.  Herzlich could not identify the road hazard that caused the tire to fail.  He testified that the tire could have with­stood the road hazard but for the weakened condition of the tire caused by the string plug. 

Herzlich was unable to determine whether the plug itself failed, because the tire was too disrupted as a result of the accident.  Herzlich admitted that there are over one million tires on the road running satisfactorily with string plug repairs in­serted from the outside.  Herzlich could not identify any authori­tative source, test, or study in support of his opinion that string plug repairs performed from the outside cause tires to fail.  Herzlich could not determine whether the tire that failed was ever repaired by Ress.

James Koran and Karen Koran testified that they owned the 1983 Bronco involved in the accident.
(footnote: 1)  In July 1986, the Korans pur­chased four B.F. Goodrich WildTrac tires for the Bronco to replace the four original equipment General tires.  One of the original tires then became a spare.  Following a trip to Wyoming in 1987, the right rear WildTrac tire was removed from the Bronco and became the spare; the spare General tire was then placed in the right rear position.

On October 14, 1988, Karen noticed that the left rear tire of the Bronco was flat.  The next morning, October 15, 1988, James jacked up the Bronco in the driveway, removed the left rear tire and took it to Ress, a Goodyear certified auto service center.  James picked up the repaired tire later that day, brought it home and reinstalled it in the left rear position on the Bronco.

The Korans did not have the tires rotated on the Bronco at any time between the summer of 1987, and the date of the acci­dent.  At the time of the accident, WildTrac tires were located on the left rear, left front and right front of the Bronco, a General tire was on the right rear and a B.F. Goodrich WildTrac was serv­ing as the spare.

James stated that the Bronco was driven approximately 28,000 miles after he purchased the WildTrac tires, and that there were many flat tires and many repairs made to the WildTrac Tires prior to the date of the accident.  James could not recall where he had all these tire repairs done, he could only recall the Ress repair.

Karen stated that sometime prior to the date of the acci­dent, she gave the Bronco to her brother, Sean Jerding, to take a trip to South Padre Island, Texas.  Jerding had the Bronco for two weeks prior to the time he and plaintiff left for South Padre Island, and during that time Jerding drove the Bronco around Normal, Illinois.  Jerding did not testify at trial.

Arkansas State Trooper Ocie Rateliff testified that he at­tended the scene of the accident, and afterward notified Jerry Hildebrand's Autobody shop (Autobody), in Prescott, Arkansas to remove the Bronco to the custody of the shop.  Autobody is a State Police accredited impound facility, and as such, was surrounded by an 8-foot chain link fence, a locked gate and supervision as required by the Arkansas State Police Department.

Officer Rateliff identified photographs taken either March 28, or March 29, 1989, showing the Bronco at Autobody.  The photographs show the spare tire in the cargo area of the Bronco.  Officer Rateliff testified that the spare tire was not secured, that it was "just sitting in there loose."  The officer stated that the fiber­glass roof of the Bronco had been thrown over the top of the spare tire.

Officer Rateliff stated that on March 28, 1989, plaintiff's attorney directed that the left rear tire of the Bronco be re­moved, crated and shipped someplace.  The officer stated that at that time, plaintiff's attorney exercised control over the truck and the tires.

In April 1989, at the request of plaintiff's attorney, Offi­cer Rateliff sought to have the Bronco removed from Autobody to a barn owned by Dr. Johnny Jones, located at the edge of Hope, Arkansas.  However, before he could move the Bronco from the shop, the officer noticed that the spare tire was missing.  Officer Rateliff inquired about the missing spare to Barry, an Autobody employee.  Barry replied that a representative of an insurance company had visited Autobody, but Barry did not know what happened to the spare tire.  Officer Rateliff did not know whether the spare tire was ever located or whether it was stolen.

Plaintiff, Mark Peterson, testified that at the time of the accident, he was a student at Illinois State University.  During spring break 1989, plaintiff and four college friends, Christ, Jerding, Jim Hoderitza and Glen Davis, travelled to South Padre Island, Texas in the Korans' Bronco.  At the time of the acci­dent, Christ was driving the Bronco eastbound on a straight stretch of Interstate 30 near Hope, Arkansas.  Plaintiff heard a slap or thump sound.  Immediately thereafter, the left rear tire blew out and the Bronco rolled over.  

As a result of the accident, plaintiff sustained a fractured neck and permanent, complete quadriplegia.  Plaintiff presented evidence that he requires 24-hour a day attendant care, as well as significant future medical treatment, and that it is not likely that he will ever work.

Stanley Runyon, an auto mechanic, testified that after the accident, he inspected the Bronco tires for plaintiff.  Runyon removed the tires from their rims.  Runyon stated that the right front tire was a WildTrac tire, that it had been damaged by a puncture and repaired with a rubber plug.  Runyon testified that a rubber plug is visibly different from a string plug.  Runyon observed no damage to either the left front WildTrac tire or the right rear General tire.

Runyon did not inspect the spare tire from the Bronco, as it had been lost before it could be inspected for evidence of damage or repair.  However, Runyon testified that photographs of the spare tire show it could have been repaired many times, and with a string plug from the outside.  From the photographs, Runyon stated that the spare tire was repaired by removing the tire from its rim.  Runyon stated that string plugs are improper because they are inserted without removing the tire from its rim.

Ress employee Gerard Kroll testified that he repaired the Bronco tire without removing it from the wheel rim with a string plug from the outside.  Ress produced records showing that the repair cost $6.  

James Gardner, a tire engineer employed by Firestone Tire Co., since 1965, testified on behalf of Goodyear.  Gardner testi­fied that the tire failure in this case was caused by road hazard impact, and that the string plug did not cause the tire to fail.  Gardner stated that a repair is improper if an outside plug does not seal the inner liner.  Therefore, the tire should be repaired from the inside using a patch and a plug.  Gardner stated that in this case, the plug did not cause the tire to fail, explaining that because the impact was strong enough to break the steel wires without tearing them loose from the rubber, air in the tire casing did not cause the tire to fail.  Gardner stated that the accident would have occurred in the same manner even had the plug never been placed in the tire.

Wendell Kegg, an independent tire failure analyst, also testified as an expert on behalf of Goodyear.  Kegg examined the tire and testified that the tire failure was caused by road impact hazard.  Kegg stated that the string plug repair was not a cause of the tire failure in the Bronco accident.

Ress' Service manager, Bob Walton, testified on behalf of Goodyear, that Goodyear sent Ress product service bulletins de­tailing how to properly repair punctured tires, and that he had knowledge of proper tire repair procedures as well as Goodyear's recommendations.  Walton stated that he had informed Ed Stahl, the owner of Ress, about Goodyear's recommendation that tires not be repaired with string plugs.

Ress employees Richard Major and Anthony Hanson also admit­ted they knew that punctured tires should be patched from the inside.  Despite this knowledge, they testified that punctured tires were routinely repaired with string plugs and without patches at Ress.

Daniel Delacruz, a former Ress auto mechanic testified on Ress' behalf that he inspected the Bronco in February 1993.  At that time, there were three tires on the Bronco, located front right, front left and rear right.  The left rear tire and the spare tire were missing at the time of Delacruz' inspection, and Delacruz was not able to remove the tires from their rims to inspect for damage or repairs.

Later, Runyon brought the Bronco to Ress.  At that time, Delacruz confirmed by serial numbers that the same three tires he previously inspected were in the same location on the Bronco.  In Runyon's presence, Delacruz removed the tires from the Bronco and removed the rims from the tires.  Delacruz inspected the tires for evidence of damage and repair.

Delacruz stated that a WildTrac tire was located at the right front position of the Bronco, and he observed no evidence of damage or repair to this tire.  Delacruz further stated that a WildTrac tire was located at the left front position, and that a puncture hole in the tire the size of a nail hole extended halfway through the tread, severing the steel belts of the tire.  Delacruz found no plug in the left front tire. 

Delacruz stated that a General tire was located at the right rear, that it had been damaged and repaired with a string plug, but not necessarily the same type of string plugs Ress used in 1988.

At the conclusion of the trial the jury returned a verdict in favor of plaintiff and against Ress in the amount of $12,650,000, and apportioned 30% of the fault for the accident to Ress.  The jury found Goodyear not guilty.  The jury apportioned 20% of fault to Bridge; 28% of fault to Ford; 20% of fault to Suburban Tire Co. and 2% to Christ.  Plaintiff entered into a post-trial settlement with Goodyear in the amount of $62,500.

Ress filed a timely post-trial motion requesting j.n.o.v., directed verdict and a new trial.  On August 30, 1995, the trial court entered an order denying all of the relief requested in Ress' motion.  Ress filed its timely notice of appeal on Septem­ber 29, 1995.

OPINION

Initially, Ress contends that the trial court erred in refus­ing to either: (1) enter j.n.o.v.; or (2) order a new trial. Ress contends that the verdict was against the manifest weight of the evidence, because plaintiff failed to show that a defective tire repair proximately caused his injuries.

The standard for granting a directed verdict or j.n.o.v. is whether the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand.  
Pedrick v. Peoria Eastern Railroad Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).  A motion for a judgment notwithstanding the verdict presents a question of law and will be granted only if there is a total failure or lack of evidence to prove an essential element of the plaintiff's case.  
Merlo v. Public Service Co.
, 381 Ill. 300, 45 N.E.2d 665 (1942).  In making a determination to enter j.n.o.v., the trial court may not substitute its judgment for that of the jury as to the credibility of the witnesses, nor may the trial court determine the preponderance of the evidence.  
In re Bridge­view
, 139 Ill. App. 3d 744, 753, 487 N.E.2d 1109 (1985).    In the present case, Ress contends that plaintiff neither proved that Ress repaired the tire that failed nor that string plug repairs cause tires to fail.  Ress points to alleged im­peaching inconsis­tencies between the trial and deposition testi­mony of James and Karen Koran.  Ress argues that James testified at trial that there were many flats and many repairs to the Bronco tires, and that although he had the tires rotated, he could not say when or how often.  James stated in his discovery deposition that there was no way for him to know whether the tire repaired by Ress was the tire that failed.

Ress further argues that Karen testified at trial that the tire that failed is the same tire James removed from the left rear in October 1988, replaced to the left rear after repairs were made, and was never removed from that position again prior to the acci­dent.  At her deposition, Karen testified that she did not know whether the tires on the Bronco were rotated after the left rear tire was repaired in October 1988, and that she did not know if any tires were repaired on the Bronco after October 1988.  However, at trial, Karen stated that the tires on the Bronco were not rotated after the left rear tire was repaired and replaced in October 1988, and that no tires were repaired on the Bronco after October 1988.  Ress argues that these inconsistencies between Karen's deposition and trial testimony render the evidence of proximate cause dubious and equivocal.   

In addition, Ress argues that Karen's trial testimony is incompetent because Karen's brother, Sean Jerding, took the Bronco to Normal, Illinois two weeks prior to driving the Bronco to Padre Island, and that the jury never heard any evidence from which it could "rationally determine" whether the spare tire was moved to the left rear of the Bronco during the two weeks Jerding drove the vehicle in Normal.

Ress further argues that the tire identification issue is speculative because the plug used to repair the right front tire was lost prior to trial, and that the left front and right front tires were switched after the accident.  

Finally, Ress argues that experts for both parties, Herz­lich, Kegg and Gardner, all testified at trial that road impact hazard caused the tire to fail.

The record reveals that Ress' arguments are pure specula­tion; there was no evidence presented at trial that the tires were rotated.  The record does not reveal any inconsistency between Karen's deposition and trial testimony.  At her deposi­tion, Karen testified that she did not recall any tire rotation between the time of the tire repair and the accident.  At trial, Karen testi­fied that the tires were not rotated in the same period.

Ress is further mistaken in asserting that Karen's testimony is incompetent because Sean Jerding could have rotated the tires and Jerding did not testify.  The burden was not on plaintiff to establish that no rotation occurred during the two weeks Jerding had the Bronco in Normal.  The record shows that plaintiff pre­sented evidence at trial that the left rear tire was defec­tively repaired at Ress and replaced on the left rear of the Bronco.  There was no testimony presented at trial that the left front and right front tires were switched, as Ress asserts.  Plaintiff presented evidence that the tires were not rotated after October 15, 1988, and therefore established a 
prima facie
 case that the faulty repair of the left rear tire proximately caused the acci­dent.

Ress' citation of 
Pedrick
 for factual similarity is mis­plac­ed.  In 
Pedrick
, the plaintiffs' testimony was equivocal as to whether railroad crossing lights were operating at the time a train struck plaintiffs' car.  Our supreme court determined that j.n.o.v. was appropriate there, because when viewing the evidence most favorably to plaintiffs, the evidence so overwhelmingly favored defendant that no contrary verdict based on such evidence could ever stand.  
Pedrick
, 37 Ill. 2d at 511.

In the present case, the record does not show similar equivo­cal testimony.  No evidence of rotation was presented.  The record shows that the General tire which was located on the right rear of the Bronco when Ress repaired the left rear WildTrac tire was still in the right rear position when the accident occurred.

Ress misrepresents the experts' testimony.  Plaintiff's expert, Herzlich, testified that the tire failed upon road hazard impact because it was improperly repaired for a puncture with a string plug, causing air to seep into the tire's casing.  Good­year's expert, Gardner, testified that the failed tire was weak­ened prior to the accident by air seepage and migration resulting from Ress' string plug repair.  Goodyear's other tire expert, Kegg, testified that tire failures result from string plug repairs and that a string plug without a patch does not effec­tively seal a tire's inner liner and air can seep into a tire's carcass.  Kegg further testified that tread separation affects belt strength and renders a tire less capable of travers­ing road hazards.

Ress' further reliance on 
Mullen v. General Motors Corp.
, 32 Ill. App. 3d 122, 129, 336 N.E.2d 338 (1975), is inapposite.  There, this court disregarded the opinion of an expert who testi­fied both at trial and at his deposition that he did not know how a defective tire was manufactured, but nevertheless opined at trial that the tire was defectively manufactured.   The court found the expert's testimony "inharmonious with the facts and physical evidence capable of verification by the court."  
Mullen
, 32 Ill. App. 3d at 131.

By contrast, in the present case, plaintiff's expert, Herz­lich, testified to his opinions based on his 30-plus years of experience and thorough evaluation of the failed tire.

Finally, Ress' argument that there was no "verifiable evi­dence submitted from which reasonable people could conclude that string plugs cause tires to fail," is belied by the evi­dence.  Evidence was presented that Goodyear, the Rubber Manufac­turer's Association, and Goodyear's Radial Service Tire all recommended that string plug repairs not be performed.  Each expert, Herz­lich, Gardner and Kegg, testified that string plug repairs were danger­ous and should not be performed.

Because the evidence at trial supported the jury's determi­nation that the string plug repair was the proximate cause of the tire failure, we conclude that the rule set forth in 
Pedrick
 was not offended by the jury's verdict, and that the trial court properly denied Ress' motion for j.n.o.v.  

Ress advances the same arguments regarding the evidence in support of its contention that the trial court improperly refused to grant a mistrial.  In addition, Ress argues that the trial court improperly prohibited it from establishing bias on the part of Karen Koran because, 
inter alia
,  Sean Jerding is her brother.

Whether to grant a mistrial is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion.  Abuse of discretion is found only where no reason­able person could take the view adopted by the trial court.  
Balzekas v. Looking Elk
, 254 Ill. App. 3d 529, 627 N.E.2d 84 (1993).

The record shows that prior to trial, Jerding voluntarily dismissed his claims against defendants without prejudice. There­fore, at the time of trial, Jerding was neither a party nor did he have any direct financial interest in the trial's outcome.  At trial, Ress sought to establish through Karen's testimony that Jerding had previously been a plaintiff in this action, and the trial court found that fact irrelevant for the purposes of estab­lishing Karen's potential bias.  However, the trial court allowed Ress to bring out any potential bias during cross-exami­nation of the Korans regarding: (1) the relationship between the Korans and Jerding; (2) Jerding's friendship with plaintiff, Peterson; (3) Jerding and plaintiff's presence in the Bronco at the time of the accident; and (4) the fact that plaintiff's attorney Pat Boyle was also Jerding's attorney.   In addition, Ress declined to exercise its right to call Jerding to testify.

In the present case, Ress has failed to show that the trial court refused it the opportunity to show bias on the part of the Korans.  Absent any abuse of discretion, the trial court properly denied Ress' motion for mistrial.

Next, Ress contends that the trial court erred in failing to instruct the jury that an adverse inference arises from plain­tiff's failure to produce at trial the spare tire which was on the Bronco at the time of the accident.  Ress argues that the trial court should have given the jury I.P.I. 5.01, which pro­vides that a presumption arises that the evidence a party fails to produce at trial would be unfavorable to that party. 

The purpose of jury instructions is to advise the jury of the correct principles of law to be applied to the evidence admitted at trial.  While the trial court has considerable discretion in determining the form of jury instructions to be given, the in­structions given must be supported by some evidence in the record, they must correctly state the law, and they must not overemphasize any particular matter.  On review, this court will not reverse a trial court for erroneously refusing an instruction unless preju­dice has resulted.  
O'Brien v. Hertl
, 238 Ill. App. 3d 217, 222, 606 N.E.2d 225, 229 (1992).  

I.P.I. 501 would have required Ress to prove that:

1. The stolen spare tire was under the con­trol of plaintiff and could have been pro­duced by the exercise of reasonable dili­gence;

2. The stolen spare tire was not equally available to Ress;

3. A reasonable prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown.

The trial court determined that there was a reasonable excuse for the nonproduction of the spare tire and refused to give I.P.I. 5.01. 

The record does not show that Ress introduced any facts or testimony to support its claims that there was no reasonable excuse for failure to produce the stolen spare tire or that it could have been produced with the exercise of reasonable dili­gence.  The record shows that the accident occurred near Pres­cott, Arkansas, and that after the accident, Arkansas State Police Officer Ocie Rateliff arranged to have the Bronco towed to Auto­body, a state police accredited impound facility.  Officer Rate­liff testified that Autobody was secured by an eight-foot chain link fence, a locked gate and was supervised as required by the Arkansas State Police.  Between March 27, and March 28, 1989, plaintiff arranged to have the Bronco and all of its tires photo­graphed.  Subsequent­ly, in April 1989, plaintiff's attorney re­turned to inspect the Bronco and noticed that the spare tire was missing.  Officer Rateliff concluded that the tire had been sto­len.  At trial, Ress failed to make any offer of proof that the State Police impound yard was not a reasonable storage location.

Plaintiff notes that the loss of the tire is a "reasonable excuse," pursuant to 
Chiricosta v. Winthrop-Breon
, 263 Ill. App. 3d 132, 635 N.E.2d 1019 (1994), and 
Brown v. Moawad
, 211 Ill. App. 3d 516, 570 N.E.2d 490 (1991), and therefore the trial court properly refused to give I.P.I. 5.01.  In 
Chiricosta
, the trial court determined that the loss of a medical log was a reasonable excuse for failure to produce medical records, despite a standing order of the hospital to preserve any and all records and docu­ments relevant to a pending lawsuit.  In 
Brown
, this court found that the loss of the first page of a medical report was a reason­able excuse where the page was deemed to have been an impermanent document not yet transferred into a permanent record. In the present case, there is a reasonable excuse for the inability to produce the spare tire; it was lost or stolen while at the impound lot not due to any deliberate fault of plaintiff.   Under these circumstances, Ress has failed to show that I.P.I. 5.01 applied to these facts. 

Finally, Ress contends that the trial court erred in failing to impose sanctions upon plaintiff for loss of the spare tire, by barring photographic and testimonial descriptions of the spare tire.  Prior to trial, the trial court denied Ress' motion to dis­miss plaintiff's complaint pursuant to Supreme Court Rule 219(c), or in the alternative, to bar plaintiff from presenting evidence of repairs to the spare tire, and to the tire that failed.

Supreme Court Rule 219(c) (134 Ill.2d R. 219(c)), in rele­vant part, provides as follows:

"If a party * * * unreasonably refuses to comply with any provision of [the rules of pretrial procedure or discovery], or fails to comply with any order en­tered under these rules, the court, on motion, may enter * * * such orders as are just, including, among others, the following:

 *   *   *   *   *   *

(iii) that he be debarred from maintaining any particu­lar claim * * * or defense relat­ing to that issue;

(iv) that a witness be barred from testifying concern­ing that issue;  [or]

(v) that, as to claims or defenses asserted in any pleading to which that issue is mate­rial, a judgment by default be entered against the offending party or that his ac­tion be dis­missed with or without prejudice."   134 Ill.2d R. 219(c).

Thus, under Rule 219(c), a trial court is authorized to bar testi­mony or other evidence if a party unreasonably refuses to comply with the relevant discovery rules, so long as the sanction imposed is just.  
American Family Insurance Co. v. Village Pontiac-GMC, Inc.
, 223 Ill. App. 3d 624, 585 N.E.2d 1115 (1992).   Unreasonable noncompliance with a discovery rule has been defined by the courts as a deliberate and pronounced disregard for a discovery rule, (
Lavaja v. Carter
, 153 Ill. App. 3d 317, 505 N.E.2d 694 (1987)), and is determined, at least in part, by the importance of the informa­tion or product that has not been produced.  
American Family Insurance Co.
, 223 Ill. App. 3d 627.

The decision to impose sanctions pursuant to Rule 219(c), and, if so, the type of sanction, is largely within the sound discretion of the trial court, and that decision will not be disturbed absent a clear abuse of discretion.  
Graves v. Daley
, 172 Ill. App. 3d 35, 526 N.E.2d 679 (1988).  Illinois courts have upheld sanctions for destruction of evidence in violation of a protective order and for failure to comply with discovery orders after evidence was inadver­tently lost.  
Stegmiller v. H. P. E., Inc.
, 81 Ill. App. 3d 1144, 401 N.E.2d 1156 (1980); see also 
Marrocco v. General Motors Corp.
, 966 F.2d 220  (7th Cir. 1992); 
State Farm Fire & Casualty Co. v. Frigidaire, Division of General Motors Corp.
, 146 F.R.D. 160 (N.D.Ill.1992);  
Jones v. Goodyear Tire & Rubber Co.
, 137 F.R.D. 657 (C.D.Ill.1991), aff'd, 966 F.2d 220 (7th Cir. Ill. 1992).  

Ress relies on 
Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Prods. Co.
, 262 Ill. App. 3d 636, 634 N.E.2d 1319 (1994), in support of its contention that the trial court erred in fail­ing to impose sanctions.  There, part of an allegedly defec­tive gas grill was inadvertently lost prior to the commencement of a law­suit by an injured party.  The trial court found that the loss of the portion of the grill foreclosed a possible defense, and there­fore imposed sanctions by barring evidence about the alleged defect of the grill.  
Shelbyville
, 262 Ill. App. 3d at 543.

The present case is distinguishable from 
Shelbyville
.  Here, the record does not show any deliberate or unreasonable effort on the part of plaintiff to violate discovery rules.  The record shows that plaintiff diligently intended to preserve the Bronco and tires in the Arkansas impound yard, but despite plaintiff's efforts, the spare tire somehow went missing.  Although the insur­ance company released custody of the Bronco to plaintiff's attor­ney, the Bronco was not hand delivered as such, as it remained physically at Autobody.  The record does not indicate that plain­tiff attempted to deliberately or negligently destroy evidence.  In addition, the record does not show that the spare tire was the "most crucial piece of evidence," as Ress argues.  Because there is no evidence of unreasonable conduct on the party of the plain­tiff here, Ress has failed to establish that sanc­tions were appro­priate.

For all of the reasons stated herein, we therefore affirm the judgment of the trial court.

Affirmed.

O'BRIEN, J., and GALLAGHER, J., concurring.

FOOTNOTES
1:
Karen Koran testified in plaintiff's case-in-chief at trial and James Koran testified in Ress' case-in-chief, as well as in a  discovery deposition prior to trial.