FOURTH DIVISION

October 12, 2000

No.  1-99-1027

WILLIAM DEMOS, JR., ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

) 
 

) 

) 

FERRIS-SHELL OIL COMPANY, and ROBERT )

FERRIS, Individually and d/b/a Ferris Shell )

Service, a Sole Proprietorship; THE BUDD ) 

COMPANY, a Corporation; SHELL OIL COMPANY, ) The Honorable

a Corporation; and GENERAL TIRE, INC., a ) James S. Quinlan,
 

Corporation,
 ) Judge Presiding.

Defendants-Appellees. )

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from a jury verdict finding defendant Shell Oil Company not liable for plaintiff's injuries.  The evidence adduced was as follows.

On May 17, 1992, plaintiff, William Demos, went to Ferris-Shell (Ferris) station on the corner of Montrose and Western in Chicago to put air in a tire he planned to use as a spare.  The tire was purchased from Al Malita, a friend.  While at the station, Demos attempted to inflate the tire with the air hose
 
provided at the Ferris station when the tire exploded, causing him severe injuries.

At trial, Demos testified that a week before the accident, he brought his van to the station for service.  While he was there, one of Ferris' employees mounted some tires and rims together 
for him.  Demos said that the employee was having some difficulty mounting the tires and rims because they did not match and had to use "a big hammer" to make the rim fit on the tire.

During that visit, Charles Fox, a service manager at the station, testified that he had a conversation with Demos about mounting some tires that Demos brought into the station.  Fox informed Demos that the wheels he brought in would not fit on his van because they were the wrong size tires.  Fox also told Demos that because the tires were 16 inches in size and the rims were 16½ inches in size, they could not be mounted, and that "the bead would not seat on the rim."  He said that "it would take too much air pressure to seat, if you could even get the tire on the rim," and that it would explode.  Demos denied having any conversations with Fox regarding the tires, wheels or anything else.

On the date of the incident, the unmounted truck tire Demos attempted to inflate was 16 inches in size, and the rim was 16½ inches in size.  While Demos attempted to inflate the unmounted tire and rim, the tire exploded.  As a result of the accident Demos sustained severe, mid-facial trauma extending from the bridge of his nose, depressing it down with an open wound, destroying the nose, and essentially leaving a hole in the center of his face.  He also experienced injury to both eyes, which left the left eye dangling from the socket; a fractured dislocation of the middle finger of his right hand; and an open laceration of his left knee.

After the paramedics arrived at the station, Demos was taken to Illinois Masonic Hospital, and he went through a number of reconstructive surgeries in an attempt to recreate portions of his face that had been damaged by the explosion.  However, in addition to being permanently blind, Demos will have severe facial abnormalities, no sense of smell, and difficulty tasting.

 Originally, plaintiff filed a negligence action against Robert Ferris and Ferris Service Station.  Subsequently, plaintiff amended the complaint to include Shell Oil Company, General Tire Inc., the manufacturer of the tire, and the Budd Company, the manufacturer of the rim.  All defendants, except the Shell Oil Company, settled with plaintiff prior to trial.  On April 29, 1998, plaintiff filed a second amended complaint sounding in negligence against Shell Oil Company, and the case proceeded to trial before a jury.

Shell Oil Company (Shell) is the owner of the Ferris station, including all of the equipment on the premises.  However, Ferris operates the station under a lease-type agreement whereby the dealer leases the station from Shell, and Shell sells petroleum products and accessories to the dealer.  Ferris entered into a five-year renewal lease with Shell between March 1, 1991, through February 29, 1996.  In addition to the lease agreement, the franchisor/franchisee relationship between Shell and Ferris was established by the provisions of a “Dealer Agreement” and an “Auto Care Agreement.”  Under the terms of the dealer agreement, Ferris was an independent dealer.  The dealer agreement provides:

“Dealer is an independent business person, and nothing in this Agreement shall be construed as reserving to Shell any right to exercise any control over, or to direct in any respect the conduct or management of, dealer's business or operations conducted pursuant to this Agreement, but the entire control and direction of such business and operation shall be and remain in Dealer, subject only to Dealer's performance of the obligations of this Agreement.  Neither Dealer not any person performing any duties or engaged in any work at Dealer's station for or on behalf of Dealer shall be deemed an employee or agent of Shell, and none of them is authorized to impose on Shell any obligations or liability whatsoever.”

The auto care agreement provides that Shell cannot exercise any control over or direct in any respect the conduct or management of Ferris.  The “Motor Fuel Station Lease” provides that Ferris had a duty to maintain the premises and all of the equipment on the premises, including the air compressor.

 At trial, Robert Ferris testified that Demos, a frequent customer of his, was knowledgeable about mechanical things and that he rebuilt engines and installed transmissions.  Demos had used the air at the station between 2,000 to 3,000 times over the years.  He also testified that Demos had never actually mounted a tire prior to the date of the accident but usually had it done by someone at the station.  Ferris testified that the tires which caused plaintiff's injuries required 80 pounds per square inch (psi) to properly inflate them.  He also stated that the decision to use a air gauge was entirely his.

Robert Gieringer, the territory manager for Shell's northern district between 1988 and November 1991, testified that inspections of the dealership were made for "image" compliance and to look for obvious unsafe conditions.  Gieringer recommended that Ferris remove the pay air machine that was located on the premises and replace it with a compressor that put out between 150 to 175 pounds of pressure.  Shell made all capital expenditures for the payment of the compressor.  The compressor was installed approximately 1½ years prior to the date of the accident.  In addition to the air hose that was used by Demos on the date of the accident, the compressor was also used for operation of the tire-changing machine, air tools, impact wrenches, and a grinder.

Merton Porter, Shell's expert who has been employed by the compressed gas industry since 1981, testified regarding the setup of the air compressor system.  The air compressor involved in this accident was set up in accordance with the guidelines of the Compress Air and Gas Institute (CAGI).  CAGI is a not-for-profit organization that recommends levels of air pressure to be used under various conditions.  CAGI recommends that the air pressure output on an inflation line at an automotive station shop be between 125 and 150 psi, and there is no recommendation that an air inflation line be restricted to 40 psi.  He also testified that it is not feasible for a gas station to regulate it because of the different types of pressure for different types of tires.  

On May 13, 1998, the jury returned a unanimous verdict in favor of the defendant, Shell.  On August 12, 1998, plaintiff filed a post-trial motion for entry of judgment in his favor notwithstanding the verdict or, in the alternative, a new trial.  This motion was denied, which gives rise to the present appeal.

On appeal, plaintiff raises the following issues:  (1) whether plaintiff should be granted judgment notwithstanding the verdict; (2) whether plaintiff should be granted a new trial as the jury's verdict is contrary to the manifest weight of the evidence; (3) whether the trial court abused its discretion in its evidentiary rulings entitling plaintiff to a new trial; and (4) whether the trial court erred in denying plaintiff's request for a directed verdict as to defendant's affirmative defenses and in instructing the jury.

A judgment notwithstanding the verdict (judgment n.o.v.) should be granted if the evidence so overwhelmingly favors the moving party that no contrary verdict could ever stand.  
Peterson v. Ress Enterprises, Inc.
, 292 Ill. App. 3d 566, 573-74, 686 N.E.2d 631, 637 (1997).  This evidence must be viewed in a light most favorable to the nonmovant.  On appellate review, the denial of a judgment n.o.v. is 
de novo
.  
Peterson
, 292 Ill. App. 3d at 574, 686 N.E.2d at 637.

Plaintiff argues that the evidence clearly shows that Shell owed him a duty, that this duty was breached, and that this breach was the proximate cause of his injuries.  In the court below, plaintiff based his argument against Shell on a theory of premises liability.  However, Illinois law is clear that a lessor is not liable for injuries caused by the dangerous or defective conditions on the premises leased to a tenant.  
Rowe v. State Bank
, 125 Ill. 2d 203, 220-21, 531 N.E.2d 1358, 1366 (1988).

Plaintiff argues in his appellate brief that Shell was negligent in performing a voluntary undertaking and that Shell was negligent in performing duty it assumed to provide a free air machine which functioned safely for customers who came to the Ferris station.  Plaintiff also argues Shell assumed the duty to warn customers of the dangers attendant to the use of equipment such as the free air hose.

Shell responds that plaintiff should not be allowed to assert this argument on appeal because it was never raised in the lower court, it was never argued at trial, and no jury instructions on this issue were given.

Although issues not raised by appellants in their trial briefs are generally considered waived, the waiver doctrine has been viewed as an admonition to the parties and not as a limitation upon the power of the reviewing court to address issues of law as the case may require.  
Mayfield v. ACME Barrel Co.
, 258 Ill. App. 3d 32, 37, 629 N.E.2d 690, 695 (1994), citing 
Schutzenhofer v. Granite City Steel Co.
, 93 Ill. 2d 208, 210-11, 433 N.E.2d 563, 564 (1982).  Additionally, Supreme Court Rule 366 provides: "Powers.  In all appeals the reviewing court may, in its discretion, and on such terms as it deems just *** (5) enter any judgment and make any order *** and further orders and grant any relief *** that the case may require." 
 134 Ill. 2d R. 366.
 
 Therefore, the court shall address this argument.

In order to recover on a theory of negligence, the plaintiff must show that defendant owed him a duty, that defendant breached that duty, that he suffered injury as a result of that breach and that defendant's breach of duty or negligence was the proximate cause of his injuries.  
Martin v. McDonald's Corp.
, 213 Ill. App. 3d 487, 489, 572 N.E.2d 1073, 1076 (1991).  The question of duty, the legal obligation imposed upon one for the benefit of another, is a question of law to be determined by the court.  
Martin
, 213 Ill. App.3d at 489, 572 N.E.2d at 1076.  If no legal duty exists based upon a "special relationship" between plaintiff and defendant,
(footnote: 1) liability can also be imposed on the defendant for negligent performance of a voluntarily undertaking.  
Martin
, 213 Ill. App. 3d at 490, 572 N.E.2d at 1076.

Under the voluntary undertaking doctrine of liability, the duty of care to be imposed upon the defendants is limited to the extent of the undertaking.  
Frye v. Medicare-Glaser Corp
. 153 Ill. 2d 26, 32, 605 N.E.2d 557, 563 (1992).

Plaintiff argues that Shell voluntarily assumed a duty to provide safety at the station, which was evidenced by several factors.  First, plaintiff argues, Shell had a great degree of control over the station's activities.  Under the terms of the dealer agreement, Ferris needed Shell's permission to purchase equipment and put it on the premises because Shell wanted to ensure that any equipment on the premises was appropriate and safe for use by employees and customers; Shell's sales representatives worked with the dealers to help maintain the health, safety and environmental concerns at the stations; Shell provided training; Shell's representatives would make weekly or monthly inspections of the dealerships for obvious unsafe conditions and would require a warning decal for equipment that could be dangerous (a decal was placed on the compressor causing the accident in this case); and finally, Shell required the Ferris station to install a free air machine.

Defendant argues that although Shell owned the station, as well as the air hose and compressor, Ferris had complete control over the day-to-day maintenance of the equipment.  Additionally, the dealer agreement, the auto care agreement and the motor fuel station lease all make it very clear that although Shell owns the station, the dealer is an independent contractor and all control and direction over the station shall remain with the dealer, and according to the lease agreement and Ferris' testimony, the dealer was responsible for the maintenance of the air line and compressor.

In 
Nelson v. Union Wire Rope Corp.
, 31 Ill. 2d 69, 199 N.E.2d 769 (1964), the Illinois Supreme Court held that defendant insurance company's gratuitous safety inspections and safety engineering services with respect to a hoist on a construction site gave rise to a duty to plaintiff construction workers.  
Nelson
, 31 Ill. 2d at 83, 199 N.E.2d at 783.  Seven of the plaintiffs were killed and thirteen others severely injured when the hoist cable broke and the plaintiffs plunged six floors to the ground.  
Nelson
, 31 Ill. 2d at 69, 199 N.E.2d at 783.  The 
Nelson
 court concluded that there was a voluntary undertaking in that case because (1) the defendant had repeatedly advertised that it provided safety engineering services which could increase an insured's worker safety and lower an insured's costs;  (2) the defendant's safety engineer made frequent safety inspections, which included careful inspection of the hoist;  (3) the defendant's safety engineer filed reports of his safety inspections with defendant and the insured and the reports specifically mentioned the hoist and sometimes included recommendations for changes to improve safety;  and (4) the insured relied on defendant's safety inspections and did not employ a safety engineer or safety inspector of its own.  
Nelson
, 31 Ill. 2d at 79-83, 199 N.E.2d at 779-83.

Applying the reasoning in 
Nelson
, the 
Martin
 court reached the same conclusion.  In 
Martin
, a robbery and murder took place after closing at a McDonald's restaurant.  
Martin
, 213 Ill. App. 3d at 489, 572 N.E.2d at 1076.  In that case, the court concluded that by the licensor's control of the licensee's security procedures the defendant voluntarily undertook to provide for the security of its licensee's employees and, therefore, a duty to provide security arose.  
Martin
, 213 Ill. App. 3d at 492, 572 N.E.2d at 1078.  The court reasoned that although there was no legal duty to protect the plaintiffs against the criminal acts of third parties, there was a voluntary undertaking by defendant's regional security supervisor, who acted directly as the security supervisor for the licensee.  The licensee did not have an operations manager or security manager of its own and the defendant provided detailed, mandatory security measures to be followed by the licensee's employees.  It created a branch of its corporation assigned to deal with security problems and even prepared a security bible for the benefit of the licensee.  Additionally, McDonald's also communicated to the store management what the security policies were and followed up with the licensee to make sure that all problems were corrected.  
Martin
, 213 Ill. App. 3d at 491, 572 N.E.2d at 1078.  Based upon all of these facts, including testimony at trial, the appellate court concluded that a duty had been created by the defendant's voluntary undertakings.  
Martin
, 213 Ill. App. 3d at 492, 572 N.E.2d at 1078.

The facts of 
Nelson
 and 
Martin
 are analogous to the facts of this case.  Although the dealer assumed control over the day-to-day operations at the station, Shell voluntarily assumed the duty of safety with regard to the Ferris station as is evidenced by Mr. Geiringer's testimony, Shell's witness, and the various agreements.

According to Geiringer's testimony, Shell conducted frequent inspections of the Ferris station for unsafe conditions at least once a month and as often as once a week.  Shell provided training for the employees so that they would be aware of any unsafe conditions.  It provided warning signs throughout the station to alert 
customers and employees to any possible safety hazards.  One of these warnings was on the compressor that was attached to the air line plaintiff used when he was injured.  Whenever Shell's sales representatives visited the station, they would insure that these warning decals were in place and would make sure that Ferris put them up if they were not.

Furthermore, the dealer agreement between Shell and Ferris specifically provides for "TRAINING" in section 10 and "Specified hours of operation: 24 hours each day," in part I.  See 
Castro v. Brown's Chicken & Pasta, Inc.
, 314 Ill. App. 3d 542, 732 N.E.2d 37 (2000) (the purchase agreement makes it clear that the franchisee was in control of the restaurant because several provisions within the agreement were stricken by the parties, such as the section entitled "TRAINING" and "STORE OPENING").  Therefore, the facts indicate that Shell assumed a duty to provide safety at the Ferris station.

Although the facts indicate Shell voluntarily assumed a duty in this case, plaintiff has not provided the court with sufficient evidence showing that the duty was breached or that Shell proximately caused plaintiff's injuries. Where a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance.  
Chisolm v. Stephens
, 47 Ill. App. 3d 999, 365 N.E.2d 80 (1977).  "Misfeasance" is the improper performance of an act that a person may lawfully do, and "nonfeasance" is the omission of an act which a person ought to do.  Black's Law Dictionary 1000, 1054 (6
th ed. 1990).

The evidence does not show there was any misfeasance on the part of Shell.  The evidence does show that Shell consistently had a sales representative come out and inspect the premises for safety issues, including the air line and the compressor; that there had been no incidents with the apparatus during the 1½ years that it was installed; and that there was a warning sign placed above the compressor
 
that the representative made sure was there each time he visited the station.  Also, although a part of plaintiff's argument was that the air compressor should have been restricted to a particular amount of pressure by way of a pressure gauge, he failed to produce any expert testimony and tendered no industry standards to support this position.  Additionally, Ferris testified that the decision to install an air pressure gauge was entirely his.

Mr. Porter, Shell's expert, testified that the amount of pressure in the air compressor, 125 to 150 psi, was the amount of pressure used to operate a standard gas station.  In addition, this amount of pressure is recommended by the CAGI.
  
Also, contrary to plaintiff's assertion that the compressor should have been restricted to 40 psi, Ferris testified that the amount of air needed to inflate the tires which caused plaintiff's injuries, if it were properly mounted, is 80 psi.  Based upon these facts, we find no breach of duty in this case.

Although the issue of proximate cause need not be addressed, the court notes that evidence in support of plaintiff's position is lacking here as well.  In addition to the existence of a duty, a plaintiff must provide proof that an injury proximately resulted from the breach of that duty.  
Arroyo
 
v. Chicago Transit Authority
, 268 Ill. App. 3d 317, 325, 643 N.E.2d 1322, 1328 (1994).

The facts are that plaintiff used the air at the Ferris station between 2,000 to 3,000 times and was very knowledgeable about the mechanics of an automobile.  Ferris testified that, prior to the explosion, he observed plaintiff filling up a tire using an air gauge.  Plaintiff testified that when he purchased the tire and rim from his friend, Malita, he never checked to see if they fit together, and he never read the warnings on the tire (which clearly stated that tires and rims should not be mismatched), even though he knew that there were different tires for different rims.

Plaintiff also testified that, approximately one week before the date of the accident, he went to the station and one of Ferris' employees mounted some tires and rims for him.  He stated that the employee had some difficulty mounting the tires and rims because they did not match and had to use "a big hammer" to make the rim fit on the tire.

Where the appellate court is called upon to review a trial court's denial of a motion for judgment n.o.v., the appellate court has no license to substitute its judgment for that of the jury.  The jury's resolution of disputed factual questions can only be set aside where "palpably erroneous" or "wholly unwarranted."  
Morse v. Johnson
, 81 Ill. App. 3d 552, 555, 401 N.E.2d 654, 657 (1980).  We do not find the jury's decision either palpably erroneous or wholly unwarranted.  
Therefore, based upon the evidence produced at trial, Shell did not breach its duty of care to the plaintiff and, therefore, could not have proximately caused the injuries.  We hold that the trial court was correct in denying plaintiff's motion for judgment n.o.v.

Plaintiff also argues that the verdict was against the manifest weight of the evidence.  The standard of review where the trial court has denied a motion for a new trial is whether the jury verdict is against the manifest weight of the evidence.  
Tedrowe v. Burlington Northern, Inc
., 158 Ill. App. 3d 438, 443, 511 N.E.2d 798, 801 (1987).  A verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.  
Tedrowe
, 158 Ill. App. 3d at 444, 511 N.E.2d at 802.

The evidence here does not mandate a new trial.  As previously discussed, plaintiff has failed to produce any evidence to support his position that Shell should be held liable for his injuries.  There was no testimony at trial that the air compressor in this case should have been restricted to a particular amount of pressure, nor did he produce expert testimony or tender any industry guidelines to support his position.  To the contrary, Mr. Porter, Shell's expert, testified that the amount of pressure in the air compressor, 125 to 150 psi, was the amount of pressure used to operate a standard gas station and that this amount of pressure is recommended by the CAGI.

The evidence presented shows that if in fact the tire had been properly mounted and the tire and rim properly fitted, the explosion would not have occurred.  Furthermore, the manufacturer of the tires, General Tires, warned of the dangers associated with trying to inflate mismatched tires and rims and also warned that a tire should not be mounted without professional assistance.  The evidence shows that if the tires had been properly fitted and mounted, it would have taken 350 to 400 psi to cause them to explode.

Therefore, the jury's verdict was not against he manifest weight of the evidence, and court's denial of plaintiff's motion for a new trial was correct.

Plaintiff next argues that the court abused its discretion in making certain evidentiary rulings.
  The admission of evidence is a matter largely within the discretion of the trial court, and its rulings will not be disturbed on appeal absent an abuse of discretion.  
Jackson v. Pellerano
, 210 Ill. App. 3d 464, 471, 569 N.E.2d 167, 172 (1991).  To be relevant, evidence must establish a fact of consequence to the determination of the pending action; it must be both material and have probative value.  However, even if the evidence is arguably relevant it may still be excluded if it would confuse the issues or tend to mislead the jury.  
Patch v. Glover
, 248 Ill. App. 3d 562, 567, 618 N.E.2d 583, 587 (1993).  

Plaintiff argues that the trial court erred on four separate occasions in admitting evidence.  First, he argues that the judge incorrectly sustained Shell's objection to Mr. Porter's testimony regarding how the air system was hooked up in 1997 as opposed to the manner in which it was hooked up on the date of the accident.  Plaintiff argues that although subsequent remedial measures are not admissible to prove negligence, this case falls under one or more of the exceptions to that rule.  
Herzog v. Lexington Township
, 167 Ill. 2d 288, 300, 657 N.E.2d 926, 932 (1995).  Subsequent remedial measures may be admitted into evidence to show ownership or control where disputed by the defendant, to prove feasibility of precautionary measures where disputed by the defendant and for impeachment purposes.  
Herzog
, 167 Ill. 2d at 300-01, 657 N.E.2d at 932.

Shell argues that not only is this evidence irrelevant, no offer of proof was made by plaintiff with respect to the substance of the excluded testimony, and that in the absence of this offer of proof, the issue cannot be preserved on appeal.

In 
People v. Andrews
, 146 Ill. 2d 413, 420-21, 588 N.E.2d 1126, 1131 (1992), our supreme court stated:  "[T]he key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court. [Citations.]  The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of
 the evidence was proper. [Citation.]  The failure to make an adequate offer of proof results in a waiver of the issue on appeal."

Our review of the record fails to indicate that plaintiff's proposed testimony was preserved through a proper offer of proof.  That being the case, we decline to review whether the trial court's refusal to allow testimony of Shell's subsequent remedial measures was in error since we are unable to determine whether such error affected the outcome of the trial.

Second, plaintiff argues that the court erroneously allowed the CAGI guidelines into evidence.  Plaintiff argues that these standards are irrelevant to the conduct of Shell and only serves to confuse the jury as to the issue of whether the air system installed by Shell was safe,  thereby resulting in prejudice to the plaintiff.  Evidence of standards promulgated by industry, trade, or regulatory groups or agencies may properly be admitted to aid the trier of fact in determining the standards of care in negligence actions.  
Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.
, 49 Ill. 2d 118, 125, 273 N.E.2d 809  (1971).

In 
Murphy v. Messerschmidt
, 68 Ill. 2d 79, 368 N.E.2d 1299 (1977), a case cited by the plaintiff, the supreme court reversed the appellate court and affirmed the opinion of the trial court, which held that the Building Officials of America's Basic Building Code (Code) was irrelevant and therefore inadmissible.  The Code, which was adopted into the 1963 city ordinance, required the installation of handrails in stairways.  However, the trial determined that the Code was irrelevant with respect to the issue of whether a handrail should have been installed in the defendant's building in 1952 when the plaintiff was injured.  Furthermore, the court reasoned that neither the Code nor the ordinance had been introduced into evidence as part of the record. 

 
Murphy
 is apposite to the facts of this case.  In this case, Shell's expert, Porter, was questioned extensively during deposition about the CAGI guidelines where both counsel for both plaintiff and defendant were present.  Furthermore, a copy of the CAGI guidelines was attached to Porter's deposition testimony and became a part of the record.  Finally, the record contains a plethora of instances where foundation was laid for the CAGI guidelines.

The trial court did not commit error by introducing this evidence because it was relevant to the issues.  The CAGI guidelines specifically provide a recommendation for the pressure of an inflation line at an automotive service shop, technical aspects of how air is compressed, and various installations for the compressors, including the one in this case.  Therefore, the court finds that the CAGI guidelines was relevant to the issue of whether Shell installed the compressor according to industry standards and was instrumental in aiding the jury's understanding of the issue as to whether the air system installed by Shell was safe.

Third, plaintiff asserts that the trial court erred in permitting Shell to use the blow up of the lease agreement between Ferris and Shell as an exhibit.  Once again, the admission of evidence is a matter largely within the discretion of the trial court and its rulings will not be disturbed on appeal absent an abuse of discretion.  
Jackson
, 210 Ill. App. 3d at 471, 569 N.E.2d at 172.    

The lease agreement was relevant to the relationship between Shell and the Ferris station.  As the court correctly noted, the relationship between Shell and the Ferris station "is really part of this lawsuit in a lot of respects," and the jury has to understand that Shell is not responsible for the acts of Ferris or any of his employees, but is only responsible for its own liability.  Therefore, we find no abuse of discretion.

Finally, plaintiff argues that error occurred when Shell's attorney referred to the proposed testimony of plaintiff's expert, Allen Milner, during his opening statement when the attorney knew that this witness would not testify at trial.

Plaintiff argues that Mr. Milner's testimony was only relevant to the liability of General Tire and the Budd Company, which have already settled in this case and, therefore, his opinion is now moot with their dismissal.  The trial court ruled that although Milner was not an abandoned witness, the missing witness instruction would not be given as requested by Shell.

Although it was inappropriate for Shell's attorney to refer to Milner after the court instructed him not to, this statement was stricken from the record.  Furthermore, the jury was instructed to disregard counsel's reference to Milner and any statement referring to him as a "hired tire expert."  Additionally, if any error occurred, it was harmless at best.  Error is not reversible error unless it was substantially prejudicial, thereby affecting the outcome of trial.  
Wodziak v. Kash
, 278 Ill. App. 3d 901, 914, 663 N.E.2d 138, 147 (1996).  The jury reached a unanimous verdict based upon the evidence presented at trial that Shell was not liable for plaintiff's injuries.  We cannot say that plaintiff was "substantially prejudiced" by counsel's merely stating Milner's name.  Any "innuendos" that plaintiff is concerned about does not warrant a new trial in this case.

Finally, plaintiff argues that the trial
 court erred in denying his request for a directed verdict as to defendant's affirmative defenses and in instructing the jury.  A motion for a directed verdict should be granted when, viewing all of the evidence in a light most favorable to the party opposing the motion, the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.  
Walter v. Carriage House Hotels, Ltd.
, 164 Ill. 2d 80, 86, 646 N.E.2d 599, 602 (1995).  The standard of review is 
de novo
.

At the conclusion of all the evidence, plaintiff moved for a directed verdict on defendant's affirmative defenses.  The trial court denied the motion and decided it would determine what defenses to allow at the jury instruction conference.

Defendant's jury instruction number 14 instructed the jury that plaintiff was contributorily negligent in the following respects: 

“(a) Failure to use a tire gauge despite his knowledge that over inflated tires could explode;

 (b) Failed to read and/or heed the warnings and instructions written on the subject tire's side walls.”

Plaintiff asserts that the court erred in denying him a directed verdict as to Shell's affirmative defense of plaintiff's comparative fault because the evidence does not support these defenses.  Plaintiff's argument is twofold.  First, he argues that he should have been granted a directed verdict with respect to Shell's affirmative defenses.  Second, he argues that the court's jury instruction with respect to his contributory negligence was in error.  This court will first address  whether the trial court's jury instruction was proper.

An instruction is justified if it is supported by some evidence in the record, and the trial court has discretion in deciding which issues are raised by the evidence.  
Branum v. Slezak Construction Co.
, 289 Ill. App. 3d 948, 957, 682 N.E.2d 1165, 1164 (1997).  The decision to give or deny a jury instruction is within the trial court's discretion, and a new trial should be granted only if a party's right to a fair trial has been seriously prejudiced.  
Palmer v. Mt. Vernon Township High School District 201
, 269 Ill. App. 3d 1056, 1062, 647 N.E.2d 1043, 1047-48 (1995).  The standard for determining whether a trial court abused its discretion in giving or refusing a jury instruction is whether, taken as a whole, the instructions fully, fairly and comprehensively informed the jury of the relevant legal principles.  
Palmer
, 269 Ill. App. 3d at 1062, 647 N.E.2d at 1048.

Based upon plaintiff's own testimony and Ferris' testimony, plaintiff did know what a tire gauge was.  However, the evidence does not indicate that plaintiff had any knowledge that he could have prevented the tire from exploding if he had used a tire gauge.  Furthermore, the evidence does not show that the reason the tire exploded was because it was overinflated, but instead it exploded because the tire and rim did not fit.  This particular instruction was not supported by the evidence in the record (
Branum
, 289 Ill. App. 3d at 957, 682 N.E.2d at 1164) and constituted error.  This error, however, does not warrant a new trial.  Based upon the court's prior analysis that there is a lack of evidence in the record indicating that Shell was negligent, this error becomes harmless.  See 
Wodziak
, 278 Ill. App. 3d at 914, 663 N.E.2d at 147 (error is not reversible error unless it was substantially prejudicial, thereby affecting the outcome of trial).

As to the second instruction challenged by plaintiff, the trial court's inclusion of this instruction was proper.  The record indicates that there were warnings on the tire that it was dangerous to mismatch a tire to a rim that did not fit, and the record indicates that plaintiff failed to read or follow any of these warnings.  Although plaintiff disputed this fact, Fox, the service manager at the station, testified that he warned plaintiff not to inflate mismatched tires and rims because the tire would explode.  Therefore, there was some evidence to support this jury instruction, and the trial court did not abuse its discretion in allowing the instruction.

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and BARTH, J., concur.

FOOTNOTES
1:
Such as common carrier/passenger, innkeeper/guest or possessor of land/member of the public.