DARLENE BIELAGA, Plaintiff-Appellant, v. EDWARD MOZDZENIAK *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—00—0926

Opinion filed March 1, 2002.

Stoller & Garstki (Stewart D. Stoller and Steven E. Garstki, of counsel), and Carey, Filter, White & Boland, of Chicago (Michael J. Murray, of counsel), for appellant.

Law Firm of Riley & Riley, of Wheaton (Thomas H. Riley III, of counsel), for appellee Edward Mozdzeniak.

Heineke & Burke, L.L.C., of Chicago (Robert M. Burke, Jr., and Matthew G. Burke, of counsel), for appellee Cheers, Inc.

JUSTICE REID delivered the opinion of the court:

Following a jury trial, the defendants, Edward Mozdzeniak and Cheers, Inc. (Cheers), were found to be not liable for the injuries sustained by the plaintiff, Darlene Bielaga. On appeal, Bielaga contends the trial court erred when it: (1) allowed evidence of her drinking, and (2) found that the jury's verdict was not against the manifest weight of the evidence. For the reasons that follow, we reverse and remand this case for a new trial.

## OVERVIEW

While in a bar, the defendant, Mozdzeniak, who was on duty as a bartender for Cheers, physically lifted up the plaintiff off of her seat. While holding the plaintiff, Mozdzeniak lost his balance, and he and the plaintiff fell to the floor. The plaintiff alleges that she was injured as a result of the fall.

## THE FACTS

At trial, Mozdzeniak, testified that on November 8, 1987, he was working as a bartender at Cheers. Cheers is a bar and grill that is owned and operated as an Illinois business corporation that, in turn, is owned and controlled by Leo Galligani.

During his testimony, Mozdzeniak was asked if he remembered lifting Bielaga on the night in question. Mozdzeniak testified that he could not remember the specific date, but remembered an incident at Cheers, where he "picked her up, maybe, in a friendly gesture like a bear hug or something and slipping."

When asked if he remembered Bielaga being hurt that night, Mozdzeniak replied, "I remember something to that nature." When asked where she was hurt, he replied, "Actually, I couldn't give you a specific part of the body[;] *** I want to say maybe her foot, knee." Mozdzeniak did not remember Bielaga leaving Cheers.

Mozdzeniak notified Galligani after the incident that there had been an accident. Mozdzeniak said that he was not reprimanded, but Galligani "made it very clear to me he was unhappy with the event."

Mozdzeniak saw Bielaga's husband after the incident. Mr. Bielaga informed Mozdzeniak that Mrs. Bielaga was hurt as a result of the accident at Cheers. Mozdzeniak apologized to Mr. Bielaga during the conversation. Mozdzeniak said that he did not mean to drop Mrs. Bielaga.

Mozdzeniak testified that there was no written policy prohibiting him from drinking while he was bartending at Cheers. Mozdzeniak said that Galligani "made it known that he didn't want anybody drunk behind the bar." Galligani was not present at Cheers on the day of the accident.

Mozdzeniak was asked if he had been drinking on the night of the incident. Mozdzeniak replied, "I might have had a few."

Mozdzeniak testified that his duties as a bartender entailed taking money from patrons, serving drinks and food, cleaning tables, and occasionally closing the bar. Mozdzeniak was asked if Galligani allowed him to pick up female customers, and he replied "to my knowledge, I shouldn't have picked up anybody." Mozdzeniak could not remember if he was responsible for closing Cheers on the night of the accident.

Jeanette Wilson Vieyra, a friend of Bielaga's, testified that on November 8, 1987, she arrived at Cheers in the late evening. When she arrived, Bielaga and Mozdzeniak were holding a conversation.

At different times during the evening, Mozdzeniak would come over to where the women were sitting and talk to them. The women were sitting next to each other at the bar. Vieyra recalled seeing Mozdzeniak drink but did not think that he was intoxicated.

On direct examination, Vieyra testified that Mozdzeniak lifted Bielaga up. Bielaga did not consent to Mozdzeniak lifting her. Vieyra said that Mozdzeniak "came to [Bielaga] and lifted her up from her legs like supporting her back. *** They both fell back. Because he picked her up, they both fell backwards." On cross-examination, Vieyra testified that she did not see Mozdzeniak pick Bielaga up in a bear hug fashion. Instead, she saw Mozdzeniak pick Bielaga up with one arm under her thighs, with his other arm supporting her back. Vieyra testified that it was similar to a groom picking up a bride and carrying her across the threshold.

Vieyra said that Mozdzeniak "fell backwards, they both fell back. *** They both hit, he flipped over, and *** both ended up on the floor basically." Vieyra noticed blood immediately from Bielaga's face after the fall. Vieyra helped Bielaga clean up in the bathroom. After cleaning the blood, she noticed that Bielaga's face was very pink. Vieyra testified that "I knew something really serious happened because the way she fell and the way she was really shaken up. She was in quite a bit of pain when she left."

Vieyra said that Bielaga was able to walk after the accident but was "walking very slowly because you [could] tell that the impact to her face, it really shook her up to where she wasn't really thinking straight, you know. She was walking yes, but it was very kind of in an apprehensive, I[-]don't[-]want[-]to[-]walk kind of way." Vieyra also

said that Bielaga looked very disoriented and shaken up when she left Cheers.

Vieyra said that she saw Bielaga sometime after the accident and that Bielaga's face looked a little different.

Counsel for the defense asked Vieyra, "[W]as [Bielaga] intoxicated [?]" and Vieyra replied, "no." Vieyra was then asked how many drinks Bielaga had. Over objection, Vieyra said that she did not know.

Bielaga testified that she and Mozdzeniak had been friends for 12 years. Bielaga initially came to Cheers with her children to visit Mozdzeniak. While she was at Cheers, Bielaga telephoned her brother, who then came to Cheers. Bielaga's brother spent some time talking with Bielaga and Mozdzeniak before leaving and taking the children home, while Bielaga remained.

Bielaga testified that Mozdzeniak "picked me up and he went flying back and I remember myself falling *** towards the table and after that I don't remember anything, not at all. I just remember myself falling and *** my face going towards the table."

Bielaga stated that she remembered Vieyra helping her up "and giving me a rag and it was all full of blood." Bielaga said that her face was numb. She said that she could not feel anything at all. Bielaga testified that she had pain in her back, "like somebody was pressing, like someone was sitting on me and I couldn't breathe."

After Vieyra helped her clean up, Bielaga was told that she went home. She could not remember going home. She was told that she drove home but could not recall.

After arriving at home, Bielaga remembered making telephone calls to her husband and daughter, and then going to sleep. When she woke the next morning, Bielaga had difficulty breathing. She asked her husband to get help. She testified that her chest and back area hurt. She said, "[m]y face, I didn't feel at all. I didn't know I had an injury to the face. It was numb. I didn't feel anything. I knew there was blood. I thought I broke my nose but I [did not] know." When Bielaga's husband saw her, he called the paramedics.

When the paramedics arrived, Bielaga told them that she fell down the stairs. She testified that she lied to the paramedics because she was embarrassed about the circumstances surrounding her injury.

Bielaga was taken to the emergency room at MacNeal Memorial Hospital. There, she told the medical staff that she was injured when she fell down stairs. Again, she said that she "was just too embarrassed to tell anybody what really happened." A few days later, Bielaga was transferred to Elmhurst Memorial Hospital (Elmhurst), where she had surgery to her face.

Under cross-examination, Bielaga was asked a number of ques-

tions concerning the amount she had to drink on the night of the accident.

The deposition of Dr. Eilo Fornatto was read to the jury. Dr. Fornatto was a physician at Elmhurst who specialized in ear, nose, throat, head, and neck surgery. Dr. Fornatto testified that Bielaga suffered a blowout fracture of her left orbit. Dr. Fornatto testified that it was his understanding that Bielaga's injuries were caused when she was dropped by a next-door neighbor and subsequently hit her face on a coffee table. Dr. Fornatto received this information from a doctor who previously treated Bielaga at Elmhurst.

At the conclusion of the trial, the jury returned a verdict in favor of the defendants. Also, the jury, by way of a special interrogatory submitted by Cheers, found that Mozdzeniak was not acting within the scope of his authority at the time of the occurrence. Subsequently, Bielaga filed timely motions for a new trial and for judgment notwithstanding the verdict (judgment *n.o.v.*). Approximately 3½ months later, Bielaga filed a notice of motion with regard to her posttrial motions and set them for hearing before the court.

The defendants then filed motions to strike and dismiss Bielaga's posttrial motions. The trial court subsequently denied both the defendant's motions and Bielaga's posttrial motions for a new trial and judgment *n.o.v.* Bielaga timely filed a notice of appeal.

## ANALYSIS

### I

Bielaga argues that the trial court erred when it allowed evidence of her drinking. Specifically, she contends the jury was prejudiced by defense allegations of her intoxication.

■ The admission of evidence is within the sound discretion of the trial court, and a reviewing court will not reverse the trial court unless that discretion was clearly abused. *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993), citing *People v. Enis*, 139 Ill. 2d 264 (1990).

■ Evidence of drinking is so prejudicial that more than mere drinking must be shown; actual intoxication with impairment of physical or mental capabilities is required. *Wagner v. Zboncak*, 111 Ill. App. 3d 268, 270 (1982). Insinuations or innuendos of intoxication based upon evidence of drinking are impermissible and irrelevant where there is no evidence of intoxication. *Wagner*, 111 Ill. App. 3d at 270, citing *Benuska v. Dahl*, 87 Ill. App. 3d 911, 914 (1980). However, such irrelevant evidence is grounds for reversal only if it results in prejudicing the jury's verdict. *Wagner*, 111 Ill. App. 3d at 270, citing *Gilberto v. Nordtvedt*, 1 Ill. App. 3d 677, 679 (1971).

In *Wagner*, the defendant was not found liable for the injuries

sustained by plaintiff during an automobile accident. The plaintiff argued that the trial court impermissibly allowed evidence of his intoxication. Prior to trial, plaintiff's motion *in limine* was granted, which prohibited defendant from introducing evidence of plaintiff's alcohol consumption prior to the accident. At trial, defendant testified the accident scene smelled like a brewery and implied that the occupants of plaintiff's car had attempted to conceal beer bottles in an adjacent vacant lot. Plaintiff moved for a mistrial, which was denied.

The *Wagner* court held that the plaintiff was denied a fair trial. Although there was a only reference to plaintiff's alcohol consumption, the court found that it occurred during the examination of the first witness, when the jury was highly attentive and the reference could have colored its perception of the following testimony, and that it violated plaintiff's motion *in limine* and plaintiff was unable to rebut the allegation without himself violating the order. *Wagner*, 111 Ill. App. 3d at 270.

In *Coleman v. Williams*, 42 Ill. App. 3d 612 (1976), a pedestrian and his wife brought an action against a motorist to recover for injuries and loss of consortium arising out of a traffic accident. While walking, the plaintiff was struck by the defendant, who was driving. The *Coleman* court wrote, "defense counsel, by innuendo, planted in the minds of the jury the possibility, if not the probability, that the plaintiff was intoxicated as he was walking on the shoulder of the road in question. We find this to be reversible error." *Coleman*, 42 Ill. App. 3d at 617.

In *Benuska v. Dahl*, 87 Ill. App. 3d 911, 914 (1980), the court found that irrelevant evidence that one defendant had thrown a can of beer out of a car after an accident was sufficiently prejudicial as to require reversal.

In this case, Bielaga filed a motion *in limine*, where she requested that the trial court bar evidence of her drinking. Her motion was denied.

Mozdzeniak raised contributory negligence as an affirmative defense prior to trial. Mozdzeniak alleged that Bielaga was negligent because she "became drunk and intoxicated [which] caus[ed] her to lose her balance." At the close of the evidence, during the jury instruction conference, based on the evidence at trial, the trial court refused to tender instructions that would have permitted the jury to consider if Bielaga was contributorily negligent. In denying the instruction, the trial judge stated that there was "nothing in here to indicate that I should give any instructions with respect to contributory negligence. So I'm not directing it out. I don't see any evidence that justifies me putting that in this instruction."

Our review of the record reveals that counsel for the defendants made numerous inquiries concerning Bielaga's drinking. During opening arguments, counsel for Cheers spoke of Bielaga's drinking on the night of the accident. Counsel stated the number and type of drinks Bielaga consumed. Counsel also stated that one reason Bielaga remained at Cheers after her brother left was to continue drinking. During Bielaga's testimony, she was questioned about the number and types of drinks that she consumed by opposing counsel, and during closing argument, counsel for defendants made comments concerning Bielaga's drinking.

The defense's persistence in following this line of questioning is best illustrated when we examine the testimony of plaintiff's witness, Vieyra. During Vieyra's cross-examination, counsel for Mozdzeniak asked the witness if Bielaga had been drinking, if Bielaga was intoxicated, if Bielaga had a "buzz," if Bielaga "was in anyway affected by the alcoholic beverages that she was drinking," and how many drinks Bielaga consumed. Afterwards, counsel for Cheers also inquired into Bielaga's drinking. Cheers' counsel asked Vieyra whether Bielaga was drinking when Vieyra arrived at Cheers, what was Bielaga drinking when Vieyra arrived, how many beers Bielaga drank, and if Vieyra saw Bielaga drinking any shots of alcohol.

■ Here, the issue of Bielaga's drinking was irrelevant because the defendants could not show that Bielaga was contributorily negligent. Whether or not Bielaga was intoxicated had no relevancy in determining whether the defendants' negligence was the cause of her injuries. It was Bielaga's testimony that she did not give Mozdzeniak permission to lift her and, in fact, there is a statement in the record that she objected to such activity when Mozdzeniak lifted plaintiff and Vieyra together just before the incident in which plaintiff was injured. Mozdzeniak picked the plaintiff up and lost his balance and both fell down.

We do not believe that this case can ever be tried without some mention of the use of alcoholic beverages. The activities of the parties occur in a bar over several hours so that the jury would not be so naive as to believe that we are dealing with teetotalers or prohibitionists. The case is quite different from *Wagner, Coleman* and *Babushka*, where there was no evidence of alcohol consumption and inappropriate speculation that had no relation to the facts of the respective cases.

Additionally, during *voir dire*, the trial court properly inquired of the prospective jurors whether they had ever been to a bar.

It is not the mere mention of alcohol consumption that is offensive in this case but, rather, the overall cumulative effect of the defendants'

continued and repeated questions concerning intoxication that created an inference that the reason Bielaga was injured was due to her drinking. As a result thereof, Bielaga was denied a fair trial.

## II

Bielaga filed timely motions for a new trial and for judgment notwithstanding the verdict but failed to file a notice of motion and set the motions for hearing until 3½ months later. Subsequently, defendants filed motions to strike and dismiss Bielaga's posttrial motions, which the trial court denied, and proceeded to hear the said posttrial motions on their merits.

■ The defendants argue that Bielaga violated Rule 2.3 of the Circuit Court of Cook County Rules (Cook Co. Cir. Ct. R. 2.3 (eff. July 1, 1976)), when she filed her notice of motion more than 90 days after she filed her posttrial motion. As such, defendants argue the trial court should have entered an order denying Bielaga's posttrial motion and abused its discretion when it did not do so for that reason.

Rule 2.3 states, "[t]he burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court *may* enter an order overruling or denying the motion by reason of the delay." (Emphasis added.) Cook Co. Cir. Ct. R. 2.3 (eff. July 1, 1976).

It is apparent from the wording of Rule 2.3 that its application is permissive, at the court's discretion. Here, the trial court chose to hear the posttrial motions, and that decision will not be disturbed, especially since appellees did not file a cross-appeal on this issue. However, the trial court then denied plaintiff's posttrial motions on their merits.

■ The standard of review where the trial court has denied a motion for a new trial is whether the jury verdict is against the manifest weight of the evidence. *Tedrowe v. Burlington Northern, Inc.*, 158 Ill. App. 3d 438, 443 (1987), citing *Mizowek v. De Franco*, 64 Ill. 2d 303 (1976); *Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 52 (2000). A verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence. *Tedrowe*, 158 Ill. App. 3d at 444; *Demos*, 317 Ill. App. 3d at 52. Likewise, a judgment *n.o.v.* should only be granted if the evidence so overwhelmingly favors the moving party that no contrary verdict could ever stand, and on appeal, the denial of a judgment *n.o.v.* is subject to *de novo* review. *Demos*, 317 Ill. App. 3d at 47, citing *Peterson v. Ress Enterprises, Inc.*, 292 Ill. App. 3d 566, 573-74 (1997).

Bielaga maintains the court erred when it denied her posttrial motions for a new trial and for judgment *n.o.v.* Bielaga contends the excessive evidence of drinking denied her a fair trial and the jury's verdict was against the manifest weight of the evidence because it was contrary to the uncontradicted evidence produced at trial. Specifically, Bielaga asserts that the jury disregarded the testimony of Mozdzeniak, Vieyra, and Bielaga concerning the accident which occurred in Cheers.

■ We hold, however, that the jury's verdict was not against the manifest weight of the evidence, but that the evidence was closely balanced. The evidence in this case could support the jury's verdict. There was evidence that clearly brought Bielaga's credibility into question. When Bielaga sought medical attention, she gave two different accounts of how she injured herself. In one version she fell down the stairs and injured her face, in another version she was dropped and injured herself when she fell on a coffee table. The jury was free to believe either of these statements and reach the conclusion that Bielaga's injuries were not sustained as a result of falling in Cheers. However, because the plaintiff did not receive a fair trial as stated above due to the excessive emphasis on drinking by defense counsel, we are constrained to reverse and remand this case for a new trial, on all issues. As a consequence, any issue regarding the jury's finding on the special interrogatory submitted by Cheers is moot.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court, and remand this case for a new trial.

Reversed and remanded.

CAMPBELL, P.J., and GREIMAN, J., concur.