ANTHONY FABIAN *et al.*, Plaintiffs-Appellants, *v.* POLISH AMERICAN VETERANS ASSOCIATION OF AMERICA *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 83—1974

Opinion filed July 3, 1984.

Michael D. Spinak & Associates, of Chicago (Arthur H. Levinson, of counsel), for appellants.

Heineke, Burke & Healy, of Chicago (L. Barrett Bodach, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiff Anthony Fabian (Fabian), a Chicago police officer, and his dependents brought an action in the circuit court of Cook County under the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135) against defendant Polish American Veterans Association (Association) alleging that the Association "owned" and "controlled" the building located at 1239 North Wood Street in Chicago. On October 8, 1978, the Association allegedly "sold or gave away alcoholic liquors" on its premises to one Pablo Magana, a guest at a wedding reception being held in the building. Magana became intoxicated and stabbed Anthony Fabian in the chest with a knife. Plaintiffs sought damages for injury and loss of support. Anthony Fabian sought $100,000 in damages, and the other plaintiffs each asked for $25,000 in damages.[1]

The Association acknowledged that it owns the premises in question and that it is the operator of a "licensed tavern" located in the building. In an affidavit attached to the Association's motion for sum-

---

[1]Section 14 of article VI of the Dramshop Act provides in relevant part: "In no event shall the judgment or recovery under this Act for injury to the person or to the property of any person as aforesaid exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid shall not exceed *** $20,000 for each person so injured ***." Ill. Rev. Stat. 1977, ch. 43, par. 135.

At oral argument plaintiffs' counsel acknowledged that the amount of damages sought was in excess of the statutory limit.

mary judgment, John Bogusz, commander of the Polish American Veterans Association, stated that the Association operates a clubroom on the second floor of the building where it serves alcohol only to its members. Pablo Magana is not a member of the Association. Bogusz stated further that on October 8, 1978, the Association rented the large hall located on the third floor of the building to a "Spanish group" for a wedding reception. The Association "rents the hall only" and does not provide any other services or food or drinks. The lessee in this instance provided all liquor or food served at the reception.

In his deposition Pablo Magana stated the following: he was invited to the reception by a friend in the wedding party. Prior to arriving at the party, he drank two beers but was not intoxicated. "Some people related to the guys that were getting married" served wine, mixed drinks, champagne and beer at the reception. A friend of Magana's went to the kitchen area of the hall and brought beer to the table where he was seated. Magana had "three or four" beers, and when "they ran out," Magana's friend went to a liquor store away from the Association's building, purchased a case of beer and brought the beer back to Magana's table. Magana again had "three or four" beers from the case. When Magana left the reception he was intoxicated. Magana was standing in the street drinking a can of beer and waiting for a friend to pick him up in a car when "all of a sudden something hit [him]." Magana saw police cars, and a police officer (apparently Fabian) told Magana he was under arrest for drinking. The police officer pushed Magana and ordered him into the police car. When Magana's brother commenced "arguing" with a second police officer, Officer Fabian grabbed Magana from behind. Magana "took out" his knife. Magana acknowledged that he intended to stab Fabian but could not remember whether he in fact did stab him.

The trial court granted the Association's motion for summary judgment, holding that "any gift of liquor on the [Association's] premises was during a wedding reception, a private social function, and no liability for such an occurrence is imposed under the Dram Shop Act, which imposes liability only on those in the liquor traffic."

Plaintiffs contend that the Association is "in the business of renting its hall" for pecuniary gain and that the Association "permitted the distribution of alcoholic beverages on its premises." Thus, plaintiffs argue that the Association is "indirectly engaged" in the liquor traffic and is liable for damages under the Dramshop Act. Plaintiffs suggest that a liberal construction of the Dramshop Act would favor their position in this case.

The Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135) provides,

in relevant part:

"Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by *selling or giving* alcoholic liquor, causes the intoxication of such person. Any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcoholic liquors are to be *sold* therein, or who having leased the same for other purposes, shall knowingly permit therein the *sale* of any alcoholic liquors that have caused the intoxication of any person, shall be liable, severally or jointly, with the person selling or giving the liquors." (Emphasis added.)

As the court stated in *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 423, 199 N.E.2d 300, 306:

"*[T]he Dram Shop Act was intended to regulate the business of selling, distributing, manufacturing and wholesaling alcoholic liquors for profit.* In other words, it was to regulate those in the business, not the social drinker or the social drinking of a group. * * *
* * *

It is true that the language of the Act in section 135 is directed to one *who sells or gives. We interpret the word 'giving' as applicable only to one engaged in the liquor business.*" (Emphasis added.)

■ The purpose of the Dramshop Act is to impose the costs resulting from its violation upon those profiting from the sale of liquor to the public. *Heldt v. Brei* (1983), 118 Ill. App. 3d 798, 455 N.E.2d 842.

"Noncommercial suppliers of liquor are not liable under the Dramshop Act [citation], and Illinois courts have consistently refused to enlarge the scope of the Act to impose liability upon anyone not engaged in the liquor business." *Richardson v. Ansco, Inc.* (1979), 75 Ill. App. 3d 731, 732, 394 N.E.2d 801, 802.

■ In the instant case, Fabian contends that the Association is "indirectly engaged" in the liquor business because the Association profited from its rental of the hall to persons who distributed alcoholic beverages. The record, however, does not disclose any "sale" or "giving" of alcoholic beverages by one engaged in the "liquor business." Neither the Association nor the "Spanish group" was in the liquor business or constituted a "seller" of intoxicating liquor within the meaning of the Dramshop Act. According to Bogusz' uncontradicted affidavit, the Association did not provide any alcoholic bever-

ages for the reception or to Magana. In his deposition Magana stated he drank two beers before he arrived at the reception, he consumed three or four beers that were provided by the wedding party hosts, and he consumed three or four more beers from the case his friend purchased from a liquor store located away from the Association's building.

To impose liability on the Association in the instant case would make no distinction between those engaged in the liquor business for profit and those who hold social gatherings where liquor is dispensed. (See *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300.) To so hold would be to enlarge by judicial interpretation the scope of the Dramshop Act.

■ We subscribe to the line of cases that have consistently refused to enlarge by judicial interpretation the scope of the Act. (*Heldt v. Brei* (1983), 118 Ill. App. 3d 798, 455 N.E.2d 852; *Camille v. Berry Fertilizers, Inc.* (1975), 30 Ill. App. 3d 1050, 334 N.E.2d 205; *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300.) Any extension of liability under the Act to persons not engaged in the "liquor business" is the prerogative of the legislature.

With regard to Fabian's contention that a liberal construction of the Dramshop Act would enable him to maintain his action, we note the apparent ambiguity between the express language of the Act and the judicial construction which has been accorded to this language by Illinois courts. Section 1, article 1, of the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 94) provides:

> "Section 1. This Act shall be *liberally construed,* to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." (Emphasis added.)

"The language of the Dram Shop Act which declares it remedial in purpose and to be liberally construed, and the decisions of our courts holding the Act to be regulatory, disciplinary and *penal* in character and to be strictly construed while apparently diametrically opposed theories of construction, can be reconciled only by taking the language of both the Act and the decisions and adapting such language to each case on its merits and facts." (Emphasis added.) *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 422, 199 N.E.2d 300, 305-06.

■ Based on the facts before us, it is our opinion that the trial court properly construed and applied the Act and did not err in grant-

ing summary judgment to defendant.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.