FIFTH DIVISION
NOVEMBER 9, 2007

No.1-06-2322

| | | |
|---|---|---|
| BRUCE WERNER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 M6 4690 |
| | ) | |
| CHRISTINE NEBAL D/b/a/ Club Alpine, | ) | |
| AL BARRANS, and JOHN DOE, | ) | Honorable |
| | ) | Robert J. Clifford, |
| Defendants-Appellants. | ) | Judge Presiding |

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, Christine Nebal was found jointly liable for injuries sustained by Bruce Werner in a physical altercation with Al Barrans and John Doe. Ms. Nebal's liability stemmed from Illinois's Dramshop Act. 235 ILCS 5/6-21 (2000). Ms. Nebal timely appeals contending: (1) the trial court's refusal to tender a jury instruction regarding the provocation affirmative defense was reversible error; (2) the trial court's refusal to tender to the jury a verdict form in which the jury was instructed to apportion the damages attributable to the actions of each defendant was reversible error; (3) the trial court's refusal to allow a paramedic to testify regarding Mr. Werner's own admission as to the amount of alcohol he consumed prior to the occurrence was reversible error; (4) the trial court's jury instructions contained an incorrect statement of law; (5) the trial court's refusal to allow testimony regarding the contents of a telephone conversation amounted to reversible error; (6) the trial court's refusal to allow witnesses to testify that the physical altercation between Al Barrans and Bruce Werner was

motivated by a dispute regarding money owed for child support was reversible error; and (7) the trial court's refusal to allow admission of the ambulance report was reversible error. We affirm.

FACTS

On June 26, 2001, Bruce Werner, Al Barrans, and John Doe were involved in the physical altercation at Club Alpine, which is a tavern located in Crestwood, Illinois. Christine Nebal owned Club Alpine at all times relevant to this appeal. Following a jury trial, Ms. Nebal was found jointly liable for Mr. Werner's injuries under Illinois's Dramshop Act. 235 ILCS 5/6-21 (2000).

The physical altercation between Mr. Werner and Mr. Barrans was largely a consequence of an ongoing family dispute. The cast of characters are related to each other as follows: Mr. Werner fathered a child with Katie Dougherty; Katie Dougherty's sister is Kim Barrans; and Kim Barrans is married to Mr. Barrans. At the time of the June 26, 2001 altercation, there was a paternity dispute between Mr. Werner and Ms. Dougherty.

In addition to the paternal dispute between Mr. Werner and Ms. Dougherty, a telephone call placed on June 24, 2001 appears to have instigated the June 26, 2001 altercation. Mrs. Barrans stated that on June 24, 2001, she received a threatening telephone call from Mr. Werner. During the telephone call, Mr. Werner told Mrs. Barrans that he would physically harm her if she ever attempted to enter his home. Mr. Barrans was in the room with Mrs. Barrans when this telephone conversation occurred and Mrs. Barrans relayed the specifics of the conversation to Mr. Barrans. Two days later, Mr. Barrans approached Mr. Werner at Club Alpine.

On June 26, 2001, Mr. Werner went into Club Alpine to meet a friend for a drink and to confirm a golf tee time for the following day. There is conflicting testimony as to what happened at Club Alpine on June 26, 2001; however, it is clear that Mr. Barrans and Mr. Werner exchanged words and a physical altercation ensued.

According to Ms. Nebal, Mr. Barrans told Mr. Werner to "do the right thing," by which Mr. Barrans meant that Mr. Werner should admit to fathering a child with Ms. Dougherty and that he should pay the child support payments that were allegedly in arrears. Ms. Nebal stated that, immediately following Mr. Barrans' comment, Mr. Werner stood up, followed Mr. Barrans back to his seat, and threw him against a video game machine. Tammy Gray, one of Ms. Nebal's employees at the Club Alpine, was working on June 26, 2001. Ms. Gray testified that Mr. Werner and Mr. Barrans were arguing for a while at the bar and, subsequently, Mr. Werner was told to leave. Ms. Gray stated that Mr. Werner became angry, knocked over some beers, and attacked Mr. Barrans. According to Mr. Werner, he was simply speaking with a friend when, for no reason, he was attacked by Mr. Barrans and John Doe.

Following the fight, paramedics arrived and tended to Mr. Werner's injuries. During Mr. Werner's treatment, the paramedics made a routine report detailing his condition. The report stated that Mr. Werner had told the paramedics that he had consumed eight beers on the night of the incident. According to the report, however, only one of the beers was consumed at Club Alpine. According to the report, one of the paramedics believed Mr. Werner was intoxicated because he was slurring his speech and walking unsteadily.

3

Pretrial conferences were held on January 27, 2006, and on January 30, 2006. At the conferences, Mr. Werner brought a motion to bar evidence of prior alcohol consumption. The trial court determined the evidence of Mr. Werner's prior alcohol consumption, by itself, would be more prejudicial than probative. As such, the trial court granted Mr. Werner's motion. At the time it granted Mr. Werner's motion, however, the trial court gave the defense the opportunity to demonstrate a relationship between Mr. Werner's actions during the altercation at Club Alpine and Mr. Werner's prior intoxication. The trial court stated that, if the defense could show a relationship between the intoxication and the events that transpired at Club Alpine, the evidence would be allowed at trial.

Mr. Werner also brought a motion in limine to bar any evidence of child support arrearage and any evidence of the paternity dispute. Mr. Werner's objection to the evidence of the arrearage was that "If ***[any] woman on that jury [has] a problem with a boyfriend who's not supporting a child, [Mr. Werner is] dead meat." The trial court agreed that the prejudicial effect outweighed the probative value and decided to allow only evidence regarding a "dispute about child support and paternity," but barred any evidence regarding the child support payments owed by Mr. Werner.

Mr. Werner also brought a motion in limine to bar any evidence from the paramedic's reports regarding his alcohol consumption on the night of the incident. The trial court granted Mr. Werner's motion, but, like its ruling with respect to the other evidence dealing with Mr. Werner's intoxication on the night of the altercation, the court stated that it would change its ruling if the defense could demonstrate a relationship between the treatment rendered by the

paramedics and Mr. Werner's prior intoxication. The trial court stated that if the defense could show that Mr. Werner's intoxication in some way precluded the paramedics from rendering treatment, then evidence of prior consumption would be allowed.

Additionally, Mr. Werner brought a motion in limine to bar any evidence of a telephone conversation between Mr. Werner and Mrs. Barrans on June 24, 2001. The trial court said that it would allow the defense to offer testimony from people who observed the conversation, but they would only be permitted to testify regarding their actions in response to what they observed. Providing an example, the trial court stated that it would be permissible for Mr. Barrans to testify that he observed his wife getting into a loud conversation and that he later confronted Mr. Werner about the conversation. However, the trial court specifically stated that Mr. Barrans would not be allowed to testify regarding the content of the conversation since the court had already determined that evidence regarding the child support payments owed by Mr. Werner to Ms. Dougherty would be too prejudicial.

Trial began on April 11, 2006. Prior to presentation of the defendants' case, Mr. Werner presented a motion to strike the affirmative defense of provocation. The trial court determined that provocation was a valid affirmative defense to a Dram shop suit and denied the motion.

Prior to the close of Ms. Nebal's case in chief, she moved the trial court to admit the ambulance report into evidence. The trial court ruled that although the paramedics who created the ambulance report had testified that such reports were made in the normal course of their employment, there was no testimony confirming that the ambulance report was a true and accurate copy of record. The trial court denied Ms. Nebal's motion to admit the ambulance

5

report, reasoning that the defense had failed to lay the proper foundation for the ambulance report.

During the jury instruction conference, the defense tendered a jury instruction and a special interrogatory on the issue of provocation. The trial court confirmed that, in Illinois, provocation is a valid defense; however, the trial court determined that there was insufficient evidence in this case to instruct the jury as to provocation. The following conversation ensued:

> "THE COURT: How would provocation come into play *** when the person who is saying he was provoked *** says that he was attacked?
>
> COUNSEL FOR MS. NEBAL: What we are dealing with here *** [is] both a nonverbal and an oral confrontation *** If there is evidence that Mr. Werner is making *** gestures to Mr. Barrans, he gets up and goes over there and says something else about the same issue, wouldn't that also be Mr. Werner provoking him to respond to his comments – to respond to his gestures?
>
> THE COURT: To me, [that is] not provocation. Provocation is set up as a defense. *** If you allege provocation, you're saying that Mr. Barrans was provoked and that provocation is what led him to do what he did in committing this offense. But Mr. Barrans is denying that he committed this offense. So the provocation *** doesn't really lie at all. ***"

Thus, the trial court barred Ms. Nebal from using provocation as an affirmative defense. Another discussion involved the "actual issues" instruction. Mr. Werner submitted an issues instruction and a burden of proof instruction, which read:

6

"Mr. Werner must prove:

First, the defendant, Al Barrans, and/or John Doe was/were intoxicated at the time of the occurrence.

Second, the defendant, Christine Nebal d/b/a Club Alpine, by her agents or employees, sold or gave the intoxicating liquor consumed by the defendant, Al Barrans and/or John Doe.

Third, the liquor thus consumed caused the intoxication of the intoxicated persons.

Fourth, the defendant's, Al Barrans', and/or John Doe's intoxication was at least one cause of the occurrence in question.

Fifth, as a result of the occurrence, Mr. Werner suffered injury."

Ms. Nebal, on the other hand, submitted the following jury instructions:

"Mr. Werner must prove:

1.      That Al Barrans was intoxicated at the time of the incident.

2.      That the defendant, his agents or employees, sold or gave intoxicating liquor consumed by Al Barrans.

3.      That the liquor thus consumed caused the intoxication of Al Barrans.

4.      That Al Barrans' intoxication was at least one cause of the occurrence in question.

5. That as a result of the occurrence, Mr. Werner suffered injury.

Ms. Nebal also tendered a verdict form in which the damages were to be apportioned between the defendants. The proposed form requested the jury to first assess liability as to each of the defendants and then requested the jury to calculate the total amount of damages. The final step required the jury to indicate a percentage of the damages for which each defendant was responsible. The court refused the form, concluding that joint liability was more appropriate.

After approximately five minutes of deliberation, the jury asked, "[Are these] all the exhibits we are going to get?" and, "[Could we] have the ambulance report?" The court determined that the answers "yes" and "no," respectively, were appropriate and sufficient. Subsequently, the jury returned a verdict against Christine Nebal, d/b/a Club Alpine, and Alexander Barrans, jointly, in the amount of $60,000. Ms. Nebal filed this timely appeal.

DISCUSSION

Ms. Nebal's first contention on appeal is that the issues and burden of proof instructions contained an incorrect statement of law. We disagree.

Every person injured in Illinois by an intoxicated person has a right of action, jointly or severally, against any person licensed to sell alcoholic liquor who causes the intoxication of the intoxicated person. 235 ILCS 5/6-21 (West 2000). Trial courts have discretion when determining appropriate jury instructions and will be reversed only for an abuse of discretion. Townsend v. Fassbinder, 372 Ill. App. 3d 890, 902 (2007). A trial court has not abused its discretion when, taken as a whole, the jury instructions fully, fairly, and comprehensively inform the jury of all relevant legal principles. Demos v. Ferris-Shell Oil Co., 317 Ill. App. 3d 41, 56 (2000).

8

Initially, Ms. Nebal asserts that the "and/or" language in the instruction incorrectly stated the law. She argues that the court's jury instruction relieved Mr. Werner of the burden of proving each element against Al Barrans or John Doe. Ms. Nebal argues that the jury could have found (1) that *John Doe* was intoxicated at the time of the occurrence; (2) that the defendant Christine Nebal, d/b/a Club Alpine, by her agents or employees, sold or gave intoxicating liquor consumed by *Al Barrans*; and (3) that *John Doe's* intoxication was at least one cause of the occurrence in question. We disagree.

After reviewing this record, we must conclude that he trial court's "and/or" language was necessary because there were two assailants. Ms. Nebal's hypothetical fails to consider that the jury instruction required the jury to hold Club Alpine liable only where "the liquor thus consumed caused the intoxication of the intoxicated person." Thus, Club Alpine would not be held liable in her hypothetical. On the contrary, this is the exact result the statute intended and we must conclude that the instruction was proper.

In addition, Ms. Nebal asserts that (1) it was reversible error for the court to refuse to allow a paramedic to testify to Mr. Werner's own admission of the amount of alcohol he consumed prior to the occurrence; (2) it was reversible error for the court to refuse to allow testimony of the contents of the telephone conversation between Mr. Werner and Kim Barrans; and (3) it was reversible error for the court to refuse witnesses to testify that the dispute between Mr. Werner and Al Barrans was about an alleged child support arrearage. We disagree.

The admission of evidence is largely within the discretion of the trial court, and its rulings will not be disturbed absent an abuse of discretion. Demos, 317 Ill. App. 3d at 53.

9

Relevant evidence is generally admissible so long as it is both material and has probative value. Demos, 317 Ill. App. 3d at 53. However, when the probative value of the evidence sought to be introduced is outweighed by its prejudicial effect, the trial court may properly deny its introduction. Krklus v. Stanley, 359 Ill. App. 3d 471, 487 (2005). Furthermore, "[e]ven if evidence is arguably relevant, the trial court may still exclude the evidence if it would confuse *** the jury." Bachman v. General Motors Corp., 332 Ill. App. 3d 760, 786 (2002). We will conclude that a trial court abused its discretion only where no reasonable person could have agreed with the trial court's decision. Lawler v. MacDuff, 335 Ill. App. 3d 144, 147 (2002).

We turn first to the issue of whether the court properly excluded evidence of the child support arrearage. Ms. Nebal's theory is that the sole cause of the altercation was the dispute over child support and paternity, not intoxication. She argues that the court's refusal to allow any evidence of an alleged child support arrearage significantly prejudiced her ability to present her theory of the case. We disagree.

The court's limitation of an alleged child support arrearage did not prevent Ms. Nebal from arguing her case. Instead, it protected Mr. Werner from unfair prejudice as a result of the alleged arrearage. As the trial court correctly concluded, it is one thing to tell a jury that there is a "child support and paternity dispute" and quite another to tell a jury that child support is in arrears. We believe that limiting references to a "child support and paternity dispute" sufficiently conveys Ms. Nebal's theory of the case without unduly prejudicing Mr. Werner. Accordingly, we cannot say the trial court abused its discretion when it did not allow evidence of the alleged child support arrearage.

Next, we turn to the trial court's decision regarding the admissibility of some evidence regarding the contents of a telephone conversation between Mr. Werner and Mrs. Barrans. The court determined that the exact statements were not necessary and it was sufficient to say Mr. Werner placed a telephone call, there was a conversation, Mr. Barrans was told about the conversation, and Mr. Barrans approached Mr. Werner to discuss the paternity issue. Ms. Nebel asserts that the trial court's decision regarding the admissibility of the contents of the telephone conversation between Mr. Werner and Mr. Barrans amounted to an abuse of discretion. We disagree.

Again, like the evidence regarding the money Mr. Werner owed for unpaid child support, it is clear that the specifics of the conversation had probative value, but the probative value was outweighed by the prejudicial effect. Indeed, Ms. Nebal's theory of the case was that a telephone call to Mrs. Barrans and an ongoing paternity dispute instigated the altercation on June 26, 2001. This record confirms that Ms. Nebal was able to present the jury with evidence to support her theory of the case notwithstanding the specific threats made during the telephone call, which the trial court concluded would have been overly prejudicial to Mr. Werner's case. Faced with this record, we must conclude that the prejudicial value of the specifics of the telephone conversation outweighed the probative value of the evidence and, therefore, the trial court's decision to limit the evidence did not amount to an abuse of discretion.

Next, Ms. Nebal asserts that it was a reversible error for the court to refuse to allow the paramedics to testify regarding Mr. Werner's admission concerning the amount of alcohol he consumed prior to the altercation. We disagree.

11

During the trial, Ms. Nebal wished to offer testimony of Ms. Starks, a paramedic who treated Mr. Werner on the night of the altercation. Mr. Werner brought a motion to bar her from testifying about his prior alcohol consumption. The court determined that the testimony was relevant, but questioned whether such evidence would assist the jury in arriving at a decision in this case. After considering the issue, the court determined that the evidence was likely to confuse, rather than assist, the jury. In addition to the court's concern that the evidence may have confused the jury, the court also concluded that the prejudicial effect of Ms. Starks' proposed testimony would have been overwhelming, especially in light of the court's prior ruling on a motion in limine, in which the court decided to bar evidence of prior alcohol consumption. As such, the court barred Ms. Starks' testimony regarding Mr. Werner's statements concerning alcohol consumption. Ms. Nebal is correct to point out that party admissions are generally admissible evidence. However, after reviewing this record, we simply cannot say that no reasonable person would agree that such evidence may have had minimal value when compared with its potential prejudice and that such evidence may have confused the jury. Accordingly, we cannot agree that the court's decision amounted to an abuse of discretion.

Ms. Nebal's next assertion is that the trial court's refusal to tender a jury instruction regarding the provocation affirmative defense was reversible error. We disagree.

Provocation is a valid defense in a Dramshop action. Akin v. J.R.'s Lounge, Inc., 158 Ill. App. 3d 834, 837 (1987). Mere words and gestures are insufficient to constitute provocation. People v. Reyes, 102 Ill. App. 3d 820, 833 (1981). Generally parties are entitled to jury instructions on their theories so long as there is some supporting evidence. Lundquist v. Nickels,

238 Ill. App. 3d 410, 431 (1992). However, the decision to give a jury instruction is ultimately within the trial court's discretion. Demos, 317 Ill. App. 3d at 56. Dramshop cases involve a very fine line between causation and provocation. Gilman v. Kessler, 192 Ill. App. 3d 630, 646 (1989). We will grant a new trial only if the trial court's refusal to give the provocation instruction seriously prejudiced Ms. Nebal's case. Stift v. Lizzadro, 362 Ill. App. 3d 1019, 1026 (2005).

We agree with the trial court's conclusion that the essence of provocation is being provoked into attacking, and after reviewing this record, we cannot find any reason to believe that Mr. Werners words or gestures constituted provocation. In fact, this record confirms that, throughout the trial, Ms. Nebal's position was that Mr. Barrans was attacked first. As such, a provocation instruction would have conflicted with the evidence offered at trial and would have confused the jury. Therefore, we cannot agree with Ms. Nebal's assertion that the trial court erred when it refused to provide the jury with an instruction on the affirmative defense of provocation.

Even if we were to assume that a provocation instruction was appropriate, we still cannot agree that Ms. Nebal was seriously prejudiced by the denial of the instruction. The trial court allowed the jury to listen to all relevant testimony that was potentially evidence of provocation, yet the jury found Ms. Nebal d/b/a Club Alpine liable. The close link between provocation and causation prevents us from finding that Ms. Nebal was seriously prejudiced by the refusal of the provocation instruction.

13

1-06-2322

The next issue is whether the trial court's refusal to tender a jury verdict form in which the jury was instructed to apportion the amount of damages attributable to the actions of each defendant was a reversible error. We conclude it was not.

An abuse of discretion standard applies when we review a trial court's decisions relating to verdict forms. People v. Roberts, 351 Ill. App. 3d 684, 690 (2004). Every person injured in Illinois by an intoxicated person has a right of action, jointly or severally, against any person licensed to sell alcoholic liquor who causes the intoxication of the intoxicated person. 235 ILCS 5/6-21 (West 2000). The statute was designed to give a substantial remedy to injured persons. Hernandez v. Diaz, 31 Ill. 2d 393, 399 (1964). In designing the Illinois Dramshop Act, the legislature sought to inhibit the sale of liquor to the extent that it causes intoxication, and to achieve its goal, the legislature imposed a penalty in the form of absolute liability. Graham v. General U.S. Grant Post No. 2665, 97 Ill. App. 2d 139, 148 (1968). In this case, the evidence at trial suggested that the participants in the altercation may have become intoxicated at Ms. Nebal's establishment, Club Alpine. As such, this case falls squarely within the Illinois Dramshop Act, and we certainly cannot agree that the trial court abused its discretion when it provided the jury with a verdict form which permitted join and several liability.

Finally, Ms. Nebal asserts that it was reversible error for the court to refuse to allow the admission of the ambulance report into evidence. We disagree.

Medical records are now treated as any other business record. Troyan v. Reyes, 367 Ill. App. 3d 729, 733 (2006). Satisfying foundational requirements to admit business records requires that the party tendering the record establish that the record was made in the regular

14

course of business at or near the time of the event or occurrence. <u>Kimble v. Earle M. Jorgenson Co.</u>, 358 Ill. App. 3d 400, 414 (2005). The accuracy of such records is presumed. <u>Kimble</u>, 358 Ill. App. 3d at 414. However, business records may be barred from admission where they are prejudicial. <u>Troyan v. Reyes</u>, 367 Ill. App. 3d at 733. Furthermore, the admission or nonadmision of business records is subject to a harmless error analysis. <u>In re Adoption of C.D.</u>, 313 Ill. App. 3d 301, 315 (2000).

The ambulance records contained evidence of the plaintiff's prior intoxication, which the trial court determined to be too prejudicial to admit. As discussed above, we do not believe the trial court's decision to limit the prejudicial evidence regarding prior intoxication amounted to an abuse of discretion. Similarly, we do not believe that the trial court's decision to bar the ambulance record amounted to an abuse of discretion. Furthermore, even if the trial court improperly refused to admit the ambulance report, we cannot agree with Ms. Nebal's contention that this particular decision warrants reversal. Both paramedics that completed the report testified at trial about most of the information in the report. Both paramedics testified that they thought Mr. Werner was intoxicated and still the jury found Ms. Nebal liable. In sum, we do not think the decision to bar the paramedics report was an error and, even if it was, we believe it was harmless since similar evidence had been offered at the trial.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.