# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Olle v. C House Corp.*, 2012 IL App (1st) 110427

---

| | |
|---|---|
| Appellate Court Caption | JAMES D. OLLE, Plaintiff-Appellant, v. C HOUSE CORPORATION, d/b/a Coach House, an Illinois Corporation, Defendant-Appellee (Tony Odisho and Michael Susara, Defendants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-0427 |
| Filed | March 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a dramshop action filed by an off-duty police officer who was patronizing a bar and was injured when he responded to the bar owner's request for assistance in quelling a disturbance, the trial court erred in entering summary judgment for the bar based on the finding that the inherent risk doctrine precluded the officer's claim, since the inherent risk doctrine does not bar recovery under the Dramshop Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-6385; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Appeal from the Circuit Court of Cook County, No. 09-L-6385; the Hon. Kathy M. Flanagan, Judge, presiding. |
| | |
| | Riffner Barber LLC, of Schaumburg (Scott Barber, of counsel), for appellant. |
| | |
| | Lindsay, Rappaport & Postel, LLC, of Waukegan (Stuart N. Rappaport and Matthew A. Cohen, of counsel), for appellee. |
| | |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. |
| | Presiding Justice R. Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, James Olle, appeals the trial court's order granting summary judgment in favor of defendant, C House Corporation, d/b/a Coach House, finding the inherent risk doctrine precluded plaintiff's claim under the statute known as the Dramshop Act (Act) (235 ILCS 5/6-21 *et seq.* (West 2008)). Based on the following, we reverse and remand for further proceedings.

¶ 2                                  FACTS

¶ 3    Plaintiff is a Cook County sheriff's police officer. On June 3, 2008, plaintiff was off duty and was injured while breaking up an altercation at defendant bar. During his deposition, plaintiff testified that, prior to the date in question, he had been to defendant bar on 100 occasions over the course of three years. Plaintiff added that, while on duty, he had responded to approximately 12 calls to defendant bar over the course of two years.

¶ 4    Plaintiff arrived at defendant bar around midnight as a patron while on a date. Plaintiff proceeded to consume several beers. At approximately 3:45 a.m., Joel Schnell, the bar owner, was informed by his security bouncer that an unknown male had choked a female while on the dance floor. Shortly thereafter, Schnell learned that there was "a big scene about the incident" occurring outside of the bar. The bar lacked security guards that evening, so Schnell approached plaintiff, whom he knew to be a sheriff's police officer, to assist in removing the unruly patrons from the premises. Plaintiff agreed. According to plaintiff's deposition testimony, he had consumed approximately four or five beers at that point, but was not intoxicated "at all."

¶ 5    Plaintiff walked with Schnell to the front of the bar and proceeded outside where a group

-2-

of four or five people were engaged in an argument. Plaintiff told the group that the owner requested they leave the area. When one of the individuals asked plaintiff, "Who the f*** are you?," plaintiff identified himself as an off-duty police officer. In response, the individual, whom plaintiff later identified as Tony Odisho, "got closer *** and started yelling f*** you, I don't give a f*** who you are." Plaintiff repeated the instruction to leave the premises, at which point Odisho grabbed plaintiff's arms, pulled him down, and "head-butted" plaintiff in the mouth. Another individual from the group, whom plaintiff identified as Michael Susara, grabbed plaintiff from behind and threw him to the ground. While on the ground, plaintiff was kicked and "hit everywhere." Plaintiff testified that he "must have been out for a while because when [he] lifted his head up" Odisho was straddling him and punching him while Susara was kicking plaintiff in the side of the head. According to plaintiff's deposition testimony, he "went out again" and woke up with Odisho still straddling him. At that point, Susara was being held by Schnell and his security bouncer. Plaintiff pushed Odisho and stood up. Odisho instructed Susara to flee and the pair began to walk through the parking lot. Plaintiff followed and said "oh no, you're not going anywhere, you're under arrest now." By the time plaintiff walked to the corner, the police had arrived. Plaintiff was unaware who called the police. Plaintiff suffered injuries as a result of the fight.

¶ 6       According to plaintiff, he was not in uniform and did not have his service weapon during the incident. Plaintiff added that, although he had his badge in his pocket, plaintiff never flashed it. Plaintiff testified that he would have followed the same procedures if he had been called to the bar while on duty to break up the altercation. Plaintiff stated that he is "police 24 hours a day and that's state law."

¶ 7       Schnell testified at his deposition that he knew plaintiff was a sheriff and asked him to "watch his back" while he attended to the altercation outside. Schnell never asked plaintiff to get involved in the scuffle; however, plaintiff positioned himself between the unruly patrons. Plaintiff then attempted to grab the arms of one of the individuals, who responded by head-butting plaintiff. Plaintiff and the individual fought and, when they separated, Schnell heard plaintiff identify himself as a sheriff's police officer. According to Schnell, when plaintiff became involved in the altercation, Schnell assumed there would not be any problems because plaintiff was a sheriff's police officer.

¶ 8       Edward Russ Williams testified at his deposition that he was the security bouncer working at defendant bar at the time in question. Williams knew plaintiff was a sheriff's police officer. Williams was attempting to diffuse the situation between the patrons when plaintiff approached and said "I have this." Williams stepped out of the way and assumed plaintiff would handle the situation because he was a sheriff's police officer. According to Williams, plaintiff stepped in Odisho's face and taunted him physically and verbally. Odisho then head-butted plaintiff. Williams provided assistance by keeping Susara away from plaintiff. After the altercation ended, Williams heard plaintiff identify himself as a sheriff's police officer.

¶ 9       On June 1, 2009, plaintiff filed a four-count complaint, raising a dramshop action against defendant bar (count I), a premises liability action against defendant bar (count II), battery against Odisho (count III), and battery against Susara (count IV). Defendant filed an answer denying the allegations in counts I and II, and asserted the affirmative defenses of

provocation as to count I and comparative negligence as to count II. Defendant also filed a motion for summary judgment as to count II, arguing that plaintiff's claim was barred by the inherent risk doctrine. On August 27, 2010, the trial court granted summary judgment on count II, finding defendant did not owe plaintiff a duty of care where plaintiff faced the risks inherent in his job and those risks were not unreasonable. Defendant then filed a motion for summary judgment as to count I, arguing that the inherent risk doctrine applies to the Dramshop Act and barred plaintiff's recovery in this case. On January 24, 2011, the trial court granted summary judgment in favor of defendant, reasoning:

> "The basis of liability under the Dram Shop Act is not a breach of a duty of care which proximately causes damages, but rather, the provision of liquor resulting in intoxication which proximately causes injuries to a third person. However, there is no doubt that a police officer must risk facing intoxicated persons who turn violent when attempting to quell a disturbance or make an arrest. There is no difference in a bar or on a street. While [the] inherent risk rule speaks of not owing [a] duty of care, it can also be viewed like the defense of assumption of risk is viewed *vis-a-vis* a strict liability claim. In that way, it can be applied to a claim under a statute such as the Dram Shop Act, as well as[ ] negligence. There have been no cases in Illinois specifically applying the inherent risk rule to Dram Shop Act claims, and, in fact, no cases involving police officers seeking recovery under the Act. However, it makes sense to apply the rule equally to Dram Shop Act claims."

Plaintiff appeals the trial court's January 24, 2011, order.

¶ 10                                        DECISION

¶ 11        Plaintiff contends the trial court erred in granting summary judgment where the Dramshop Act imposes strict liability, which trumps application of the inherent risk doctrine. Defendant contends the inherent risk doctrine precluded plaintiff's ability to raise a dramshop action. Both parties maintain that the applicability of the inherent risk doctrine to the Dramshop Act is an issue of first impression.

¶ 12        Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2008). When reviewing a motion for summary judgment, a court must consider all of the evidence strictly against the movant and in a light most favorable to the nonmoving party. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002). We review *de novo* a trial court's decision granting summary judgment. *McNamee v. State*, 173 Ill. 2d 433, 438, 672 N.E.2d 1159 (1996).

¶ 13        A dramshop action is not based on negligence. *Charles v. Seigfried*, 165 Ill. 2d 482, 487, 651 N.E.2d 154 (1995); *Osinger v. Christian*, 43 Ill. App. 2d 480, 482, 193 N.E.2d 872 (1963). Rather, the Dramshop Act provides limited no-fault liability (*Charles*, 165 Ill. 2d at 487) where a plaintiff can demonstrate that a patron was intoxicated as a result of liquor provided by a bar and the plaintiff suffered resulting injuries because of the patron's intoxication (*Bass v. Rothschild Liquor Stores, Inc.*, 88 Ill. App. 2d 411, 414, 232 N.E.2d 19 (1967)). "The legislative intent of the Dramshop Act is to place responsibility for damages

-4-

caused by the intoxication from the consumption of alcohol on those who profit from its sale." *Walter v. Carriage House Hotels, Ltd.*, 164 Ill. 2d 80, 86-87, 646 N.E.2d 599 (1995). Courts have expanded on the explicit terms of the statute by creating the defenses of complicity (*Walter*, 164 Ill. 2d at 86) and provocation (*Werner v. Nebal*, 377 Ill. App. 3d 447, 456, 878 N.E.2d 811 (2007)). These judicially created affirmative defenses are designed to protect only innocent persons injured as a result of the sale or gift of intoxicating liquor. *Akin v. J.R.'s Lounge, Inc.*, 158 Ill. App. 3d 834, 837-38, 512 N.E.2d 130 (1987); see *Hopkins v. Powers*, 113 Ill. 2d 206, 211-12, 497 N.E.2d 757 (1986) ("[the] limitation on the class of plaintiffs under the Dramshop Act has been referred to as the innocent-suitor concept and has been applied to deny recovery to injured third persons who are guilty of complicity in the intoxication of the individual directly causing their injuries").

¶ 14    Although we do not find that plaintiff fits the concept of an "innocent suitor," we find that, after recognizing the fundamental characteristics of the inherent risk doctrine, it does not apply to bar a dramshop action. Typically, the inherent risk doctrine, or "fireman's rule," is raised in a premises liability action to demonstrate that there was no duty owed by the defendant. *Rusch v. Leonard*, 399 Ill. App. 3d 1026, 1031-32, 927 N.E.2d 316 (2010). Accordingly, unlike the judicially created affirmative defenses of the Dramshop Act, the inherent risk doctrine is *not* an affirmative defense, in that it does not presuppose the existence of an otherwise valid cause of action; rather, when the doctrine applies, an essential element of the cause of action is negated. *Id.* (citing *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 527, 651 N.E.2d 121 (1995)).

¶ 15    Moreover, the inherent risk doctrine is premised on the concept of assumption of the risk, which is a common-law doctrine. See *Sharp v. Gallagher*, 95 Ill. 2d 322, 326, 447 N.E.2d 786 (1983). The supreme court has advised that statutes in derogation of common law will not be found to abrogate common-law affirmative defenses, *unless* it plainly appears that the intent of the statute is to impose strict liability, such as in the case of the Dramshop Act. *Barthel v. Illinois Central Gulf R.R. Co.*, 74 Ill. 2d 213, 220-22 (1978). In other words, assumption of the risk is not an available defense when a statute calls for strict liability. *Cf. Johnson v. Johnson*, 386 Ill. App. 3d 522, 535, 898 N.E.2d 145 (2008) (eliminating the availability of assumption of the risk as a defense would be tantamount to applying strict liability). In terms of a dramshop action, contributory negligence is not a consideration. *Barthel*, 74 Ill. 2d at 221-22 (citing *Overocker v. Retoff*, 93 Ill. App. 2d 11, 21, 234 N.E.2d 820 (1968)). To the extent that the defenses of complicity and provocation could be considered "assumption of the risk" defenses, we find no basis for creating another defense where the complicity defense has, over the course of time, been narrowly limited to require a demonstration that the plaintiff "actively contributed to or procured the inebriate's intoxication" (emphasis omitted) (*Walter*, 164 Ill. 2d at 95, 87-95 (tracing the history of the defense and noting the inconsistent application of a defense that was once overly broad)) and the provocation defense has been repeatedly called into question. *Galyean v. Duncan*, 125 Ill. App. 3d 464, 466, 466 N.E.2d 264 (1984) (citing *Nelson v. Araiza*, 69 Ill. 2d 534, 543, 372 N.E.2d 637 (1978) ("[a]ssertions that one who provokes an attack is barred by complicity [citations] are incompatible with the doctrine. Complicity is not predicated on the plaintiff's contribution to his injury but only upon his contribution to the inebriate's

intoxication.")); but see *Gilman v. Kessler*, 192 Ill. App. 3d 630, 548 N.E.2d 1371 (1989) (recognizing a split in authority regarding the availability of the provocation defense and finding that the defense was valid); *Akin*, 158 Ill. App. 3d at 837 (same).

¶ 16    We recognize the potential for widespread litigation by public servants against bar owners and those engaged in the sale or gifting of intoxicating liquor; however, the legislature has not carved out any exceptions to the application of the Dramshop Act except that the intoxicated person himself has no right to bring a case for injuries under the Act. 235 ILCS 5/6-21(a) (West 2008) ("[n]othing in this Act shall be construed to confer a cause of action for injuries to the person or property of the intoxicated person himself"). Our goal for statutory interpretation is to ascertain and give effect to the intent of the legislature by applying the plain and ordinary meaning of the language of the statute while reading it in context. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440, 925 N.E.2d 1113 (2010). It is well established that "[w]e do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Solon*, 236 Ill. 2d at 441. The Dramshop Act provides:

> "*Every person* who is injured within this State, in person or in property, by *any* intoxicated person has a right of action in his or her own name, severally or jointly, against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person." (Emphasis added.) 235 ILCS 5/6-21(a) (West 2008).

Moreover, the Dramshop Act is to be liberally construed as it " 'was designed to give a substantial remedy and should be allowed to have effect according to its natural and plain meaning.' " *Walter*, 164 Ill. 2d at 86-87 (quoting *Hernandez v. Diaz*, 31 Ill. 2d 393, 399, 202 N.E.2d 9 (1964)). Taverns and bars agree to accept and be bound by the Dramshop Act by entering into the liquor business. *Hopkins v. Powers*, 136 Ill. App. 3d 501, 504 (1985).

¶ 17    Notably, our research reveals that police officers have brought lawsuits under the Dramshop Act in this state and under other dramshop statutes outside of Illinois. *Fabian v. Polish American Veterans Ass'n of America*, 126 Ill. App. 3d 80, 466 N.E.2d 1239 (1984) (summary judgment was granted in favor of the defendant in a dramshop action brought by an injured police officer and his dependents because the defendant was not engaged in the "liquor business" when it rented a hall to a third party for a wedding in which alcohol was served); see, *e.g.*, *Rivera v. Club Caravan, Inc.*, 928 N.E.2d 348, 351-52 (Mass. App. Ct. 2010) (finding, in relevant part, the evidence presented to the jury was sufficient to hold the bar liable for a car accident caused by an intoxicated patron with a police officer); *O'Sullivan v. Fischo Entertainment Corp.*, 571 N.Y.S.2d 38 (N.Y. App. Div. 1991) (holding that the police officer could bring a claim for injuries sustained while responding to a bar fight under the dramshop statute); but see *McCaw v. T&L Operations, Inc.*, 619 N.W.2d 420, 422 (Mich. Ct. App. 2000) (the fireman's rule did not preclude recovery under the dramshop statute because the police officer's injuries resulted from a reason independent than that for which he was at the scene); *Smith v. Tully*, 665 A.2d 1333 (R.I. 1995) (a similar "police officer's rule" barred recovery under the Rhode Island dramshop statute where the legislature expressly provided that common-law tort defenses such as the "police officer's rule" were

available under the statute); *Hannah v. Jensen*, 298 N.W.2d 52, 54-55 (Minn. 1980) (the fireman's rule barred recovery for the police officer against a bar for injuries inflicted by an intoxicated patron where the court had previously held that the fireman's rule applied to the strict liability dramshop statute).

¶ 18 We recognize the potential negative public policy implications in that bar owners may not call on the police to quell disturbances for fear of exposure to liability. We find it curious, however, that our research did not reveal an abundance of cases brought by police officers against bar owners. Logic dictates that the lawsuits are not being filed because the Dramshop Act limits recovery to $45,000, adjusted according to the consumer price index (235 ILCS 5/6-21(a) (West 2008)), and any reward obtained from a dramshop insurer can be subject to a worker's compensation lien, when applicable. Accordingly, in Illinois jurisprudence, the fact remains that the Dramshop Act is available to police officers as a theory of recovery.

¶ 19 We, therefore, conclude that the inherent risk doctrine does not preclude recovery under the Dramshop Act. Consequently, we find the trial court erred in granting summary judgment. We remand this cause for further proceedings.

¶ 20 CONCLUSION

¶ 21 We conclude that the inherent risk doctrine does not preclude the filing of a dramshop action and, therefore, the cause is remanded for further proceedings.

¶ 22 Reversed and remanded.